THOMAS RAYMOND RAFFERTY ET UX. *v.* JAMES FRANKLIN WEIMER ET AL.

[No. 549, September Term, 1976.]

*Decided May 16, 1977.*

The cause was argued before MORTON, MENCHINE and MASON, JJ.

*Alan J. Bloom*, with whom was *Henry Holzman* on the brief, for appellants.

*M. King Hill, Jr.*, with whom were *John E. Sandbower, III* and *Jon H. Grube* and *Smith, Somerville & Case* on the brief, for appellees.

MASON, J., delivered the opinion of the Court.

The appellants, Thomas R. Rafferty and wife, brought suit in the Superior Court of Baltimore City against James Franklin Weimer and B & P Motor Express, Inc., appellees, for personal injuries and loss of consortium. The jury rendered a verdict in the amount of $340,000 in favor of the appellants. After rendition of the verdict, the trial judge entered a judgment n.o.v. in favor of the appellees on the basis that Thomas R. Rafferty was guilty of contributory negligence as a matter of law. From this judgment the appellants appeal.

The following questions are presented:

I. Was there legally sufficient evidence for the jury to find that Rafferty's injuries were caused by the negligence of Weimer?

II. Did the trial court err in finding Rafferty guilty of contributory negligence as a matter of law?

III. Did the trial court err in instructing the jury to reduce to present value the amount of wages which Rafferty would lose in the future because of his permanent disability?

IV. Did the trial court err in its instructions to the jury on the liability issues?

On the evening of December 4, 1973, Rafferty left his home in Baltimore City to visit his father in the Frostburg area, who had been hospitalized that morning for a heart attack. At approximately 9 P.M. a tractor-trailer, owned by B & P Motor Express, Inc. and driven by Weimer, collided with the Rafferty vehicle. At the time of the collision, the 1965 automobile of Rafferty was stopped without lights on the shoulder of Interstate 70W with two feet extending into the right westbound lane of the highway.

Prior to the accident, Weimer was driving on Interstate 70W in the right lane and within the speed limit. There was no traffic in front of or on the side of him; he had a clear and unobstructed view of the highway for at least one-quarter mile. The area in which the accident occurred was well-lighted and the roadway was dry. Weimer indicated that before the accident he never saw Rafferty or his vehicle. In describing the accident, Weimer, in his deposition, stated:

> Q. All right. Would you tell us exactly what happened immediately prior to the accident and at the time of the accident?
>
> A. I was proceeding west and I just glanced in my right — over my left rearview mirror —
>
> Q. Is it your left or your right?
>
> A. Left.
>
> Q. Your left mirror?
>
> A. I looked in my left mirror, and when I brought my head back straight, the impact occurred.

The collision resulted in extensive damages to the entire left side of Rafferty's vehicle and damages to the front end

of the tractor-trailer and four tires along the right side of it. The Rafferty vehicle was lodged against the guardrail on the shoulder of the road. Two feet of the car extended into the traveled portion of the highway since there was not enough space for the vehicle to fit entirely on the shoulder of the road. Rafferty's key was in the ignition in the on position, but the engine was not running. The only skid marks found were those directly beside the left front tire, indicating the vehicle had moved six inches from left to right. Grease marks were found on the hood of the car, which was closed, and on Rafferty's right hand.

Rafferty was found unconscious approximately twenty feet from his car across the guardrail in the median strip adjacent to the shoulder of the road. His trousers had been torn off; there were severe injuries to his left hand and several brush burns on his body. The back of his head was injured, apparently when it struck a steel-grated drain located in the underbrush. In addition, a red substance was found on the guardrail which appeared to be blood.

A subsequent examination of Rafferty disclosed that he sustained contusions of the right leg and both thighs; a compound fracture of the left forearm and hand, and a closed fracture of the right hand. He also suffered a permanent, irreversible brain stem injury which expert testimony indicated was caused by a vehicular accident. Rafferty has been hospitalized or in a nursing facility since the accident. He is a cerebral cripple and is unable to tell anything about the accident.

## I.

We will first consider whether there was sufficient evidence of primary negligence on the part of Weimer to take the case to the jury. Although the appellees do not concede, they apparently do not contest the fact that Weimer was negligent in sideswiping the Rafferty vehicle. Weimer had a clear and unobstructed view of the highway;

if he had looked, as alleged, he would have seen the Rafferty vehicle.

> We accept the rule that where a witness testified that he looked and listened, but did not see or hear a certain object, which, if he had actually looked and listened, he must necessarily have seen and heard, his testimony is not worthy of consideration. *Bush v. Mohrlein,* 191 Md. 418, 423 (1948).

Not only must Weimer's negligence be proved, the proximate cause of the injuries to Rafferty must have resulted from it. The appellants' theory of causation is that at the time of the accident Rafferty was standing in front of his vehicle with his hands on the hood; that when the tractor-trailer collided with the vehicle, the resulting impact hurled Rafferty into and over the guardrail onto a sloping grass plot adjacent to the shoulder of the road.

The circumstantial evidence relied on by the appellants to support this theory is: the collision of the tractor-trailer with the Rafferty vehicle, the damages resulting to both vehicles, blood on the guardrail in front of the Rafferty vehicle, grease marks on the hood of the Rafferty vehicle and on Rafferty's right hand, and the medical testimony that Rafferty's injuries were caused by a vehicular accident.

In proving causation, Rafferty is permitted to rely on circumstantial evidence. Direct testimony is not essential. The matter of causation does not have to be established by direct and positive proof to an absolute certainty. Reasonable certainty is the quantum of proof required. *See Peterson v. Underwood,* 258 Md. 9, 17 (1970) and *Otis Elevator v. LePore,* 229 Md. 52, 58 (1962).

The appellees argue, in effect, that the circumstantial evidence, relied on by the appellants to support the inference that Rafferty was struck by his own vehicle following the collision with the Weimer tractor-trailer, is untenable and totally contrary to indisputable scientific principles. To buttress this argument, the appellees assert that since the skid marks indicated that the Rafferty vehicle only moved six inches sideways, without any forward movement, "[t]he

only reasonable inference from this evidence is that if Rafferty were indeed standing near and struck by his own car he could not possibly have been thrown forward and to the right a distance of 20 feet by a six-inch lateral movement of the vehicle."

Notwithstanding the fact that the skid marks failed to indicate any forward movement of the Rafferty vehicle, Weimer, in his deposition, admitted that the vehicle might have moved forward a little. Skid marks without more, are not conclusive as to movement. In *York Motor Express Co. v. State,* 195 Md. 525, 535 (1950), the Court of Appeals said:

> So, we recognize that it is not generally safe to rely exclusively on testimony as to marks made by vehicles on a road for judicial determination of the movements of the vehicles just before a collision.

*See also Shafer v. State,* 171 Md. 506, 509 (1937).

We think the jury could have found it more probable than not, that the sideswipe collision, which demolished the left side of the Rafferty vehicle and damaged the right front end of the tractor-trailer and four of its tires, caused some forward movement of the Rafferty vehicle. The absence of forward skid marks merely suggests that the tires on the Rafferty vehicle were pointed straight ahead without application of the brakes. Consequently, at the moment of impact there was no resistance or friction to cause forward skid marks. Any other conclusion under the physical facts here would, in our opinion, be contrary to common knowledge and experience if not contrary to scientific principles.

We further think the jury could have found it more probable than not, based on the severity of the impact; grease marks on the hood of the car and on Rafferty's hand; blood on the guardrail; and medical testimony that Rafferty's injuries resulted from a vehicular accident, that the negligent act of Weimer colliding with the Rafferty vehicle was the proximate cause of Rafferty's injuries.

In *Otis Elevator v. LePore, supra,* half of a child's left foot was amputated by an escalator. No witnesses actually saw and testified to the exact spot where the child's foot was caught and injured. The evidence disclosed that there was an unsafe gap between the steps of the escalator and its side walls. The defendant argued that the child's foot may have been injured at some point on the escalator which was not unsafe. Therefore, it could not be held liable since it was not shown that said negligence was the proximate cause of the injuries. The Court, in affirming the judgment for the plaintiff, stated what is known as the "more probable than not" rule as set forth in *Prosser, Torts* (2nd ed.), §44:

> Plaintiff is not, however, required to . . . negative entirely the possibility that the defendant's conduct was not a cause, and it is enough that he introduces evidence from which reasonable men may conclude that it is more probable that the event was caused by the defendant than that it was not. The fact of causation is incapable of mathematical proof, since no man can say with absolute certainty what would have occurred if the defendant had acted otherwise. *Id.* at 58.

The appellees' alternate contention is that the "evidence produced by the appellant points to only one logical conclusion — that Rafferty was struck by some motor vehicle at some time while he was walking or standing in one of the traveled westbound lanes of Interstate 70." This theory of liability and causation fails to rise above the level of speculation and conjecture as to what actually occurred. Nothing in the evidence adduced at trial indicated that the appellant's injuries occurred while he was walking on or standing in the traveled portion of the highway.

In determining whether a plaintiff has produced sufficient evidence to go to the jury, it is axiomatic that this evidence as well as all legally permissible inferences drawable therefrom must be considered in the light most favorable to the plaintiff.

In *Fowler v. Smith*, 240 Md. 240 (1965) the Court of Appeals held:

> Negligence is a relative term and must be decided upon the facts of each particular case. Ordinarily it is a question of fact to be determined by the jury, and before it can be determined as a matter of law that one has not been guilty of negligence, the truth of all the credible evidence tending to sustain the claim of negligence must be assumed and all favorable inferences of fact fairly deducible therefrom tending to establish negligence drawn. ... And Maryland has gone almost as far as any jurisdiction that we know in holding that meager evidence of negligence is sufficient to carry the case to the jury. The rule has been stated as requiring submission if there be any evidence, however slight *legally sufficient* as tending to prove negligence, and the weight and value of such evidence will be left to the jury. *Id.* at 246. (Citations omitted).

In applying the above principles to the present case, we conclude that there was legally sufficient circumstantial evidence of inferred causation to submit the question of Weimer's negligence to the jury.

## II.

The appellees contend that even if there was sufficient evidence to support Rafferty's theory of causation, Rafferty was contributorily negligent as a matter of law because he violated Article 66½, § 11-1001 and § 11-509 of the Annotated Code of Maryland, and that said violations caused the accident and injuries complained of.

§ 11-1001 provides:

> (a) *In general.* — Upon any highway outside of a business or residence district no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the roadway of the highway when it is practicable to stop, park, or so leave the vehicle off that part of the highway, but

in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles, and a clear view of any stopped vehicle shall be available from a distance of 200 feet in each direction upon the highway.

(b) *Disabled vehicles.* — This section shall not apply to the driver of any vehicle which is unintentionally disabled while on the roadway of a highway in a manner and to an extent that it is impossible to avoid stopping and temporarily leaving the disabled vehicle in that position.

The evidence is undisputed that Rafferty's vehicle was stopped on the shoulder of the highway against the guardrail with two feet of the vehicle extending onto the roadway. It is also undisputed that Weimer had a clear and unobstructed view of the highway for at least a quarter mile and that there was ample space opposite the Rafferty vehicle for free passage of the tractor-trailer. Further, the evidence disclosed that the Rafferty car was parked as close to the guardrail as possible; that he was proceeding to visit his father who had been hospitalized; that grease was on the hood of the car and on Rafferty's right hand; that the key was in the ignition switch in the on position and the engine was not running. We think there was ample circumstantial evidence and permissible inferences for the jury to find that the Rafferty vehicle was disabled and it was not practical for him to stop other than on that part of the roadway where the collision occurred.

§ 11-509 provides:

(a) No pedestrian shall walk along or upon any controlled-access highway or any ramp or access road leading to or from any controlled-access highway except as provided in subsection (b).

(b) No person shall leave any vehicle which is on any controlled-access highway or which is on any ramp or access road leading to or from any controlled-access highway, except when an emer-

gency prevents movement of the vehicle in which he is riding, and then the person may proceed only to the nearest telephone or other source of assistance.

As to Rafferty's violation of this section, the appellees assert "[e]ven assuming that there was an emergency, § 11-509(b) clearly requires that the motor vehicle operator who does leave his vehicle must proceed only to the nearest telephone or other source of assistance and shall not work upon his vehicle or walk upon the controlled-access highway." We decline to follow this creative mis-interpretation of the statute. We find nothing in the language of the statute that would have prohibited Rafferty from working on his vehicle. As we read it, the statute merely prohibits a pedestrian from walking along or upon any highway, except when proceeding in an emergency which prevents movement of his vehicle, to the nearest telephone or other means of assistance. Moreover, there was sufficient evidence from which the jury could have found that the Rafferty vehicle was disabled and that an emergency precluded its movement.

Because we have already held that there was no evidence in the record that Rafferty was walking or standing on the traveled portion of the highway, or sustained any injuries thereon; we need not consider the authorities cited by the appellees involving contributory negligence of pedestrians since they are inapposite.

In order to justify a holding that the plaintiff was guilty of contributory negligence as a matter of law, "the evidence must show some prominent and decisive act which directly contributed to the accident and which was of such a character as to leave no room for difference of opinion thereon by reasonable minds." *Baltimore & O.R.R. v. Plews*, 262 Md. 442, 454 (1971). It is clear that in the present case there was room for differences of opinion as to Rafferty's negligence. This is especially true since Rafferty, because of his inability to testify, was entitled to the presumption that he exercised ordinary care for his own safety. *Nizer v.*

*Phelps,* 252 Md. 185 (1969) and *Baltimore Transit v. Castranda,* 194 Md. 421 (1950).

### III.

The appellants not only urge us to reverse the judgment n.o.v. and reinstate the verdict of the jury in the amount of $340,000, they also urge us to remand the case for re-trial on the issues of damages only, because the trial court erred in its instruction on reducing future damages to present value. The trial judge, in his instructions on damages, said:

> . . . [I]f you find that the loss of earning capacity extends into the future. . . and if you consider what loss of earnings he may have for a number of years into the future, if that is your determination, then you are instructed that you must take into account, in determining the amount of money, you must calculate the present value of any sums which you are to compensate for in the future; that is if you are allowing for wages five years from now or ten years from now, if you consider that as a measure of damages in this case, you must calculate the present value of such future sums by discounting the value of the sum to be received at some future date to its present value by using an interest rate which you believe represents the interest which a sum awarded today would earn between today and the date at which the sum of money would actually have been received.

The appellants argue that the trial judge erred in instructing the jury to reduce future damages to present value when neither the Court of Appeals nor this Court has required such an instruction in a non-death case. In *Sun Cab Co. v. Walston,* 15 Md. App. 113 (1972), this Court flatly held that a trial judge may not properly decline to give a present value instruction in a death case, when requested. This holding was affirmed by the Court of Appeals in *Walston v. Sun Cab Co.,* 267 Md. 559 (1973).

In support of their contention that a present value

instruction is not required in a non-death case, the appellants take comfort in a statement made in *Hutzell v. Boyer*, 252 Md. 227 (1964), to the effect that "reduction of damages to present value is not customary in Maryland, except in cases of wrongful death, . . ." *Id.* at 237-38. Judge Powers, however, in speaking for this Court in *Sun Cab Co. v. Walston, supra*, stated:

> . . . [C]haracterization of the rule as *customary* in wrongful death cases does not mean that it is any less the law in such cases, nor that a judge may properly decline to instruct the jury upon it when such instruction is requested. *Id.* at 128.

By the same token, characterization of the rule as not customary in non-death cases does not mean it is any less the law in such cases. An analysis of the reason for the rule requiring reduction of damages to present value in death cases makes clear that the same principles should apply in non-death cases. There is neither reason nor logic in an argument that it is error not to give the present value instruction in a death case, but error to grant such an instruction in a total and permanent injury case which is, in effect, economic death. See *Lumber Terminals, Incorporated v. Nowakowski*, 36 Md. App. 82 (1977).

The appellants also contend it was error for the trial court not to permit argument to the jury "regarding the continuing trend of inflation under which we have lived and which has accelerated tremendously in recent years." We find nothing in the record that such a request was made. Therefore, the appellants have not preserved for appellate review the trial court's alleged restraint on the scope of jury argument. Maryland Rule 1085. Moreover, the appellants offered no evidence as to what the projected future rate of inflation would be. The trier of fact is only allowed to consider "such estimates of future changes in the purchasing power of money as are based on sound and substantial economic evidence, and as can be postulated with some reliability." *United States v. English*, 521 F. 2d 63, 75-76 (9th Cir. 1975).

## IV.

In the event the judgment n.o.v. is reversed, the appellees contend the trial court erred in its instructions to the jury on the liability issues. The substance of their contention is that they requested the court to instruct the jury that if it finds Rafferty's violations of the Motor Vehicle Code, in any way, caused or contributed to his injuries, then it *must* find he was contributorily negligent. Contrary to the requested instruction, the court advised the jury that if Rafferty violated the statutes in question and said violations caused or contributed to his injuries, then it *may* find that he was contributorily negligent.

The appellees argue that the court's instruction was not in accordance with the Maryland law. They rely on *Ford v. Bradford,* 213 Md. 534 (1957), a case involving a violation of the Motor Vehicle Code in which the court said:

> [W]hen submitting [the issue of negligence] to the jury, the Court should inform the jury of [the statutory] requirements . . . and instruct them that if they find as a matter of fact a failure in these requirements, this failure is evidence of negligence; and, if the jury further find that such failure was a proximate cause of the [appellant's] damages, it constitutes negligence. *Id.* at 542.

In considering the propriety of the judge's instruction, we consider the charge as a whole. Here the appellees objected to the use of the word *may* instead of the word *must.*

> The Maryland law is well established that the trial court's instructions to the jury must be read as a whole and that it is not permissible to take isolated portions of the charge which may contain inartificial methods of expression, when the charge, considered as a whole, fairly presents the case to the jury on the issues presented by the evidence in the case. *Jones v. Federal Paper Bd. Co.,* 252 Md. 475, 484 (1969).

The purpose of oral charges is to tell the jury in

simple words what the law is in a case before them, and we will not be too particular in criticizing the words used if the result is sufficient. *Bull Steamship Lines v. Fisher*, 196 Md. 519, 529.

We have repeatedly stressed the fact that we cannot put the "trial judge in a strait jacket and prescribe or adopt a formula to be used and followed by him," with respect to his instructions to the jury. *Casey v. Roman Catholic Archbishop*, 217 Md. 595, 612.

In our opinion the instruction of the trial court, taken as a whole, even if error, did not amount to prejudicial error.

> *Judgments N.O.V. reversed and judgments entered on the jury's verdicts.*
>
> *Costs to be paid by appellees.*