642 A.2d 264

**L & P CONVERTERS, INC.**

v.

**ALLING & CORY COMPANY.**

**No. 1272, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

June 6, 1994.

564

Gary C. Adler, argued (O'Connor & Hannan, on the brief), Washington, DC, for appellant.

Frederick C. Leiner, argued (William C. Sammons and Tydings & Rosenberg, on the brief), Baltimore, for appellee.

Argued before MOYLAN, GARRITY and BLOOM, JJ.

MOYLAN, Judge.

L & P Converters, Inc., appellant, appeals from an order of the Circuit Court for Anne Arundel County entering judgment in favor of Alling & Cory Company. After denying both parties' motions for summary judgment and proceeding on the merits of the action, the circuit court found for Alling & Cory Company on its negligent misrepresentation claim and awarded it $25,615.40, along with costs and prejudgment interest on $9,135.40 as of March 1, 1991. No findings were made as to its other claims of breach of contract and breach of warranty for fitness for particular purpose.

On appeal, L & P Converters, Inc. contends that the trial court erred in denying its motion for summary judgment. Although the appellant expressed its argument in that manner, it acknowledged in oral argument before this court that it had intended, rather, to challenge the circuit court's judgment by asserting that the circuit court's determination of liability was clearly erroneous in that the tort of negligent misrepresentation was not established by the evidence presented at trial.

We find that the circuit court was not clearly erroneous, and, thus, we affirm.

## FACTS

Alling & Cory Company (Alling & Cory) is a paper merchant located in Savage, Maryland. It supplies paper bought from paper mills and converters to printing companies and other corporations. In late October, 1990, United Book Press (United Book), a book publisher, contacted Alling & Cory, soliciting a bid for a contract to supply 16,000 pounds of a sixty or seventy pound dull coated offset paper meeting JCP A260 code for a United States Department of the Army job on which United was bidding.

Michael Hoffner, a sales representative for Alling & Cory, telephoned L & P Converters, Inc. (L & P), a paper converter located in Massachusetts, to obtain a quotation on the paper. Hoffner spoke to Terri Gough and explained his requirements. Gough responded that L & P had sixty-five pound paper and that she was not certain whether it met JCP A260. Subsequently, Gough sent a sample of the paper to Hoffner with a note stating that it would meet the JCP A260 code.

Alling & Cory bid on the paper contract using L & P's quotation. United Book, in turn, used Alling & Cory's bid to bid on the government job and won the bid. Consequently, Alling & Cory won their bid for the paper contract and placed an order for the paper in the amount of $9,135.40 with L & P.

The paper was delivered directly to United Book. United Book expressed concern to Alling & Cory as to whether the shade of the paper met the JCP A260 code. Specifically, United Book indicated that the shade appeared "to be more of a cream than white." Hoffner contacted Gough and asked for assurance that the paper met the specifications. Gough confirmed verbally and in writing that the paper met the JCP A260 code. Hoffner conveyed that information to United Book, and it produced the job for the government.

Upon inspection, the government rejected the job because the paper was too rough, the color of the paper was too yellow, and the paper was the wrong weight. Additionally, the color of the endleaves did not meet the government's specifications. United Book reprinted the job at a cost of $16,480, and the

government accepted it. Alling & Cory reimbursed United Book for its reprinting costs. Subsequently, Alling & Cory demanded reimbursement from L & P. L & P refused.

In March, 1992, Alling & Cory filed a complaint in the Circuit Court for Anne Arundel County. L & P filed a Motion to Dismiss the complaint in May, 1992, which was denied by the circuit court in July, 1992. Discovery was conducted by both parties. Alling & Cory filed a Motion for Summary Judgment as to count II of its complaint in October, 1992. Subsequently, L & P filed a Motion for Summary Judgment as to all counts of the complaint in early May, 1993. On May 12, 1993, a hearing was held. The circuit court denied all motions for summary judgment, without consideration of the merits of the motions, and proceeded to conduct a trial. At the close of the evidence offered by Alling & Cory, L & P made a motion for judgment, which was denied. L & P presented its case and renewed its motion for judgment.[1] The circuit court found in favor of Alling & Cory. The circuit court then proceeded to determine the amount of damages and entered judgment in favor of Alling & Cory in the amount of $25,-615.40, along with costs and prejudgment interest on $9,135.40 as of March 1, 1991. This appeal resulted.

### Legal Analysis

The trial court found, after hearing the evidence presented at trial, that L & P was liable for negligent misrepresentation. The tort of negligent misrepresentation is actionable when it is shown that

(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;

(2) the defendant intends that his statement will be acted upon by the plaintiff;

(3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;

---

1. The circuit court was not required to rule on that superfluous motion in that it is not necessary under Md. Rule 2–519.

(4) the plaintiff, justifiably, takes action in reliance on the statement; and

(5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Gross v. Sussex,* 332 Md. 247, 259, 630 A.2d 1156, 1162 (1993).

L & P argues that the evidence presented did not support a finding that it owed Alling & Cory a duty of care, that L & P knew that Alling & Cory would rely on its statements, that Alling & Cory justifiably relied on its statements, and that Alling & Cory suffered damage proximately caused by L & P's negligence. We disagree.

 On appeal, the judgment of a trial court will not be set aside on the evidence unless it is clearly erroneous. Md. Rule 8–131(c). In determining whether the trial court was clearly erroneous, an appellate court considers the evidence produced at trial in a light most favorable to the prevailing party. If, viewed in that light, there is competent evidence present to support the trial court's determination, the trial court is not clearly erroneous and its judgment will not be disturbed on appeal. *Maryland Metals v. Metzner,* 282 Md. 31, 41, 382 A.2d 564, 570 (1978). In this case, therefore, our analysis of the appellant's contentions is limited to whether, viewing the evidence in a light most favorable to Alling & Cory, competent evidence was produced at trial to support the trial court's finding of liability for negligent misrepresentation.

## Duty

L & P argues that Alling & Cory's claim for negligent misrepresentation is precluded because it failed to establish that L & P owed it a duty of care. The appellant asserts that the evidence presented does not support a finding that there was a special relationship between the parties at the time the statements were made. Consequently, it contends that, because its negotiations concerning the sale of the paper to Alling & Cory were at arm's length, resulting in monetary loss only, it did not owe Alling & Cory a tort duty of care.

■ Where failure to exercise due care only creates a risk of economic loss, an intimate nexus between the parties is generally required. *Weisman v. Connors*, 312 Md. 428, 446–448, 540 A.2d 783, 791–793 (1988); *Jacques v. First Nat'l Bank*, 307 Md. 527, 534, 515 A.2d 756, 759 (1986). The requirement of an intimate nexus is satisfied by contractual privity or its equivalent. 307 Md. at 534–535, 515 A.2d at 759–760.

■ In the absence of contractual privity, its equivalent has been found and a tort duty of care has been imposed when "a sufficiently close nexus or relationship" is shown. *Weisman v. Connors*, 312 Md. at 448, 540 A.2d at 793. In *Weisman*, the Court of Appeals found that false statements made by Weisman to Connors during pre-contractual discussions conducted with regard to an employment contract established the relationship necessary to impose a tort duty of care. The Court stated, 312 Md. at 448–449, 540 A.2d at 793:

> We think the jury could have found from the evidence that the circumstances under which the two men came together in precontractual negotiations created a sufficiently close nexus or relationship as to impose a duty on Weisman not negligently to make statements of present or past facts about FWC or the new position of executive vice president. The manifest purpose of the meeting between the two high level executives was for Weisman to impart, and Connors to digest, relevant and accurate information concerning FWC and the proposed new position which Weisman intended to create.

*See Martens Chevrolet v. Seney*, 292 Md. 328, 338, 439 A.2d 534, 539 (1982) (evidence sufficient to submit claim for negligent misrepresentation to jury in situation where misrepresentations were made during bargaining period prior to the signing of a contract for sale of automobile distributorship); *Giant Food v. Ice King*, 74 Md.App. 183, 189, 536 A.2d 1182, 1185 (1988) (special relationship between potential supplier and buyer existed so as to impose a duty of care by virtue of communications over a period of seven months).

In this case, L & P's initial misrepresentation occurred before it entered into a contract with Alling & Cory for the sale of paper. Evidence revealed that L & P is a job lot paper converter and Alling & Cory is a paper broker. Hoffner, an Alling & Cory sales representative, testified that he contacted Gough, an L & P sales representative, for a quotation on 16,000 pounds of a sixty or seventy pound dull coated offset paper meeting JCP A260 code. Gough testified that Hoffner told her that "the job needed to meet certain specifications." Additionally, Gough testified that she checked to make certain the paper she intended to supply met those specifications. Evidence was also presented, in the form of testimony from Hoffner and Gough, that Gough knew Alling & Cory was bidding on a job using the quotation she had provided. Gough affirmatively stated, in a note accompanying a sample of the paper, that "[t]his item will meet J.C.P. Code on quality." There was also evidence that Hoffner, after receiving the sample, asked Gough in two telephone conversations, before he bid the job and before he placed the order, whether the paper met the specifications. Hoffner testified that, in his business, he relies on suppliers' statements regarding specifications and that Gough did not tell him that he could not rely on her statement. The evidence presented also indicated that this order was the first order for paper Alling & Cory had given L & P.

We find that those facts were sufficient to support a determination that an intimate nexus or special relationship existed between the parties so as to permit the imposition of a duty of care. The evidence suggests that the sole purpose of Alling & Cory's initial telephone call and subsequent conversations was to ascertain whether L & P had paper that would meet the specifications required for the job it was attempting to secure. The specifications were precise, and the evidence indicates that it was important for Alling & Cory to receive accurate information. The evidence presented indicates that the discussions closely resemble the relationships which the *Weisman, Giant Food,* and *Martens Chevrolet* courts found to be sufficient to establish the requisite "intimate nexus." Addi-

tionally, we note that Gough made another statement after the parties had entered into a contract for the sale of the paper. In response to a request from United Press, Gough wrote a letter to Hoffner stating that the paper met JCP A260 code. That fact lends further support to the trial court's finding of a duty of care.

## Reliance

L & P further contends that the evidence presented did not establish either that Alling & Cory justifiably relied on its statements or that L & P knew that Alling & Cory would do so. This argument focuses on the sample L & P sent to Alling & Cory. The appellant asserts that Alling & Cory was not justified in relying on its statements in that it received a sample and should have ascertained for itself whether the paper met the government specification.

In *Giant Food v. Ice King*, 74 Md.App. at 192–193, 536 A.2d at 1186, we set forth the test for reasonable reliance as articulated by Judge Cardozo in *Glanzer v. Shepard*, 233 N.Y. 236, 240–241, 135 N.E. 275 (1922). Writing for New York's highest court, Judge Cardozo stated:

"We must view the act in its setting, which will include the implications and the promptings of usage and fair dealing. The casual response, made in mere friendliness or courtesy ... may not stand on the same plane, when we come to consider who is to assume the risk of negligence or error, as the deliberate certificate, indisputably an "act of law" ... intended to sway conduct."

We will apply that test to this case.

■ In this case, Hoffner testified that, in his business, he relies on suppliers' statements as to specifications and that quotations are generally given over the telephone. Hoffner also testified that: "In all honesty, you can't get a job with the government based on samples. They want to know coming into it that it meets the JCP code." Evidence revealed that Gough knew that the paper was for a government job. Additionally, Hoffner testified that Gough did not tell him not to

rely on her written statement accompanying the paper. George Peacock, United Book's General Manager, testified that he did not ask Alling & Cory for a sample and that it was not standard practice to ask for a sample when bidding on a government job unless the government requested one. The government did not request a sample in this case. The evidence, therefore, tends to show that it was not customary to use samples when bidding a government job such as this. We find that there was sufficient evidence presented to support the trial court's finding that Alling & Cory justifiably relied on L & P's statement.

■ Appellant contends that it did not know that Alling & Cory probably would rely on its statement. There was evidence presented to support this argument, but there was also evidence presented to the contrary. The evidence revealed that government jobs generally did not require samples and that turn around time for bids was short. There was also evidence that Hoffner, after receiving the sample, asked Gough in two telephone conversations, before he bid the job and before he placed the order, whether the paper met the specifications. Hoffner testified that Gough answered affirmatively. Further, Peacock and Hoffner testified that Gough gave written assurance that the paper met the specifications when asked about the color after the paper had been delivered to United Book. Thus, evidence was presented from which the trial court could find that L & P knew that Alling & Cory would probably rely on its statements.

■ Underlying the appellant's contentions with regard to reliance is a suggestion that Alling & Cory should have tested the sample or shown the sample to the government. Alling & Cory does not have a duty to do so. *Gross v. Sussex,* 332 Md. 247, 265–269, 630 A.2d 1156, 1165–1167 (1993). In *Gross,* the Court of Appeals, in discussing an action for deceit, rejected the appellee's contention that the appellant had the ability and knowledge to verify the truth or falsity of the statements and should have done so. The *Gross* court explained that Maryland law does not require a buyer to inform itself in an action

for deceit and applied that analysis to the tort of negligent misrepresentation. The Court quoted W. Page Keeton et al., *Prosser and Keeton, on the Law of Torts* § 108 at 752 (5th Ed. 1984), 332 Md. at 269, 630 A.2d at 1167, as follows:

> "It is now held that assertions of fact as to quantity or quality of land or goods sold, the financial status of corporations and similar matters inducing commercial transactions, may justifiably be relied on without investigation, not only where such investigation would be burdensome or difficult, as where land which is sold lies at a distance, but likewise where the falsity of the representations might be discovered with little effort by means easily at hand. The plaintiff is not required, for example, to examine public records to ascertain the true state of the title claimed by the defendant. It is only where, under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own."

In this case, the evidence supports a finding that it was not readily apparent to Alling & Cory that it should not rely on L & P's statements as being true. Neither Alling & Cory nor United Book could ascertain from a cursory glance whether the paper met the government specifications. Consequently, Alling & Cory was not required to conduct further investigations when it had been assured by L & P that the paper met the government's specifications.

## Causation

The government rejected the job because the paper was too rough, the color of the paper was too yellow, and the paper was the wrong weight. Additionally, the endleaves did not meet the government's specifications. L & P contends that, because the government rejected the job on four different grounds, its actions were not the proximate cause of the damages sustained by Alling & Cory. We disagree.

Evidence was before the trial court, in the form of deposition testimony, from which it could find that, had the paper

not been the wrong color, the other defects may not have been discovered. George Watson, of the Government Printing Office, testified that:

> For instance—and I have inspectors who are expert at this—you have to have cause to inspect, or you should have cause to inspect. United Book delivered. There are no complaints. So I'm sitting here looking at a book and I know the stock is supposed to be white instead of yellow, then I have cause to inspect it.

Consequently, we find that there was sufficient evidence presented to support the trial court's finding of proximate causation.

## Conclusion

Viewing the evidence in a light most favorable to Alling & Cory, we hold that the trial court was not clearly erroneous in finding for Alling & Cory on its claim of negligent misrepresentation. Therefore, we affirm.

*JUDGMENT AFFIRMED;*

*COSTS TO BE PAID BY APPELLANT.*