695 A.2d 203

**Torsak ROSSAKI, et ux.**

v.

**NUS CORPORATION, et al.**

**No. 1155, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

June 19, 1997.

Kevin C. Golden (Lawernce H. Schwartz, Stephen E. Williams and BayH & Connaughton, P.C., Washington, DC, on the brief), for NUS Corp.; Susan M. Ponce and Hallburton/Brown & Root, Inc., Houston, Texas, of counsel.

LeAnn M. Johnson (Jeffrey L. Leiter, Jeffrey S. Longsworth and Collier, Shannon, Rill & Scott, P.L.L.C., on the brief), Washington, DC, for appellees Auto Clean and Able Associates.

Argued before EYLER, THIEME and SONNER, JJ.

EYLER, Judge.

The question of first impression presented by this case is whether § 4–409 of Md.Code, Env. art. (1996 Repl.Vol.) creates a private cause of action for contamination of property. The trial court held that the statute did not create a private cause of action and dismissed appellants' claim. While we do not reach the issue of whether § 4–409 creates a private cause of action applicable in certain circumstances, we will affirm the trial court's judgment because § 4–409 does not create a private cause of action on behalf of buyers of real property against sellers or prior occupiers of such property.

## Facts

On January 23, 1990, Torsak Rossaki and Mayuree Rossaki ("the Rossakis"), appellants, entered into a contract to purchase certain real property from Auto Clean, Inc. ("Auto Clean"), appellee. At that time, the property was leased to Amoco Oil Company ("Amoco") and subleased to Able Associates, Ltd. ("Able"), appellee, which operated an Amoco brand gas station and convenience store. The contract initially was subject to a financing contingency, which later was removed. The contract did not make the sale subject to any other contingencies relevant to the issues in this case.

The Rossakis did testify, however, that there was an oral agreement between the parties that the sale of the property was contingent on an inspection of the property and a finding

that it was not contaminated. This was denied by Auto Clean. The property was environmentally assessed prior to settlement, but the parties dispute who controlled the testing entities, *i.e.*, Auto Clean, or the Rossakis' lender, or both. The parties also dispute whether the Rossakis obtained a copy of any or all of the reports relating to testing prior to settlement. In any event, American Environmental Group, Inc. was engaged to perform an environmental assessment, and in a report dated June 18, 1990, it recommended that soil analyses be performed. American Environmental Group, Inc. retained Geo Environmental, Inc. ("Geo") to perform the analyses. An August 1990 report indicated that Geo found no significant contamination but stated that "possible contamination ... cannot be totally precluded."

The Rossakis' lender received a copy of the Geo report and requested additional testing in the northeast corner of the property. Additional analyses were performed by Geo, including soil borings to a depth of 10 feet. Geo reported its observations in a letter dated September 13, 1990 and a report dated October 8, 1990. In the October 8 report, Geo recommended an additional analysis utilizing two bore holes to a depth of 25 feet in order to test the groundwater.

NUS Corporation ("NUS"), appellee, was retained to do additional work. A representative of NUS and a representative of Auto Clean met at the site to discuss the scope of NUS's undertaking, but the participants recalled the conversation differently. The NUS representative testified that he asked about the groundwater and that the Auto Clean representative responded that another firm was doing the groundwater investigation. The Auto Clean representative testified that there was no discussion about groundwater. In any event, NUS performed three borings in the northeast corner of the property to a depth of 12 feet and reported its findings in a letter dated December 7, 1990. This letter was directed to the Rossakis and admittedly was received by them. In the letter, NUS stated that it found limited soil contamination with little likelihood of contact with groundwater and, consequently, suggested that remediation was not required. Sub-

sequently, NUS was asked to provide a cost estimate for remediation, which it did while reiterating its opinion that remediation was environmentally unnecessary. In early January, at the request of the Rossakis' lender, soil was removed from the northeast corner of the property. NUS then tested the site of removal and reported to the Rossakis that the contaminated soil had been removed from the site by the current owner. The Rossakis' lender approved the financing and the parties settled on February 1, 1991. The Rossakis thereafter terminated Amoco's lease and Able's sublease and entered into negotiations with Mobil Oil Corporation ("Mobil") to lease the property to Mobil to operate a gasoline station and convenience store. Mobil performed its own environmental assessment of the property. The preliminary results of that assessment in May 1991 and the final results in August 1991 revealed severe, widespread contamination of soil and groundwater. Based on the results of that assessment, Mobil refused to lease the property.

On February 25, 1994, the Rossakis filed a complaint in the Circuit Court for Montgomery County against various parties. Subsequent to a ruling on various motions, the Rossakis filed an amended complaint asserting, to the extent here pertinent, a private cause of action under Env. art., § 4–409(a) against Auto Clean and Able and negligent misrepresentation against NUS. The trial court granted the motion to dismiss the amended complaint, filed by Auto Clean and Able, for failure to state a claim upon which relief can be granted. The negligent misrepresentation claim against NUS was tried, resulting in a jury verdict in favor of NUS. By special verdict form, the jury found that the Rossakis had proven their claim of negligent misrepresentation against NUS but also found that NUS had proven that the Rossakis were contributorily negligent. The Rossakis filed a motion for a new trial and, after it was denied, noted an appeal to this Court.

## Questions Presented

Appellant presents the following questions:

I.  Whether the lower court erred in dismissing with prejudice the Rossakis' claims under Section 4–401, *et seq.* of the Environment Article of the Annotated Code of Maryland (1996 Repl.Vol.).

II.  Whether the jury's verdicts with regard to negligent misrepresentation and contributory negligence are inherently inconsistent.

III.  Whether the Rossakis had a duty to otherwise investigate NUS' representations.

Appellees phrase the questions differently, but the essence is the same, except that appellees, Auto Clean and Able, also inquire as to whether, even assuming that § 4–409(a) does create a private cause of action, the Rossakis' allegations are sufficient to state a claim. Finally, Auto Clean and Able inquire as to whether the Rossakis filed suit within the applicable period of limitations.

### Discussion

### A.

### Availability of Private Cause of Action Under § 4–409(a)

The Rossakis, relying primarily on the plain language of § 4–409(a) of the Environment Article and the definitions of certain of its terms, conclude that the statute creates a private cause of action under the facts of this case. The Rossakis further argue that legislative history is consistent with the plain language and, finally, they rely on *Board of Education of Prince George's County v. Mayor and Council of Riverdale,* 320 Md. 384, 578 A.2d 207 (1990), as authority for the proposition that the Court of Appeals has recognized a private cause of action under the statute.

Auto Clean and Able assert that § 4–409(a) must be read in harmony with the entire statutory scheme, which is to protect the waters of the State. Enforcement is the responsibility of the Department of Environment, § 4–402, and the Attorney General, § 4–502. Auto Clean and Able also point to § 4–403 as evidence of express legislative intent not to change the

common law. In this case, there is no common law action by the Rossakis against Auto Clean and Able. The Rossakis asserted causes of action based on nuisance, negligence, and strict liability, but they were dismissed on motion. Those issues were not appealed and are not before us.

Auto Clean and Able also point out that the State statute is modelled on the Federal Water Pollution Control Act, which does not contain a private cause of action. The enforcement mechanisms are similar in both acts, including a provision for penalties. *See* Environment art., § 4–417. They contend that there is no express private cause of action in the Maryland statute, and there is no citizen suit protection, as is contained in the Federal Water Pollution Control Act. Auto Clean and Able also rely on the legislative history of the State statute to support their position.

Alternatively, Auto Clean and Able argue that the Rossakis failed adequately to allege a cause of action and, specifically, that they failed to allege a discharge that has or will reach state waters.

Finally, Auto Clean and Able argue that the Rossakis' action is barred by the three-year statute of limitations. They assert that discharges, if any, must have occurred before the deed was executed on February 1, 1991. Applying the discovery rule, the Rossakis should have known of their claims by no later than that date.

We begin our analysis by setting forth the standard of review. In considering a motion to dismiss for failure to state a claim under Rule 2–322(b)(2), a court must assume the truth of all well pleaded facts and all inferences that can reasonably be drawn from them. *Hrehorovich v. Harbor Hospital*, 93 Md.App. 772, 781, 614 A.2d 1021 (1992), *cert. denied*, 330 Md. 319, 624 A.2d 490 (1993). When reviewing the grant of a motion to dismiss, we must determine whether the trial court was legally correct. *Id.* at 785, 614 A.2d 1021. "The grant of a motion to dismiss is proper if the complaint does not disclose, on its face, a legally sufficient cause of action." *Id. See also Lubore v. RPM Associates, Inc.*, 109

Md.App. 312, 322, 674 A.2d 547, *cert. denied,* 343 Md. 565, 683 A.2d 177 (1996).

Preliminarily, we note our disagreement with appellants' assertion that the Court of Appeals recognized a private cause of action under Subtitle 4 in the case of *Mayor and Council of Riverdale, supra.* That case did not present the issue of whether a private cause of action is created by § 4–409(a), and does not aid our analysis of the issue.

In any event, we need not reach the issue of whether § 4–409(a) creates a private cause of action applicable in certain circumstances because, even assuming that it does, we hold that it does not protect a purchaser of property that was damaged by oil spillage prior to the time of purchase.

In the case of *Rosenblatt v. Exxon,* 335 Md. 58, 642 A.2d 180 (1994), the Court of Appeals held that an occupier of commercial property may not maintain actions for strict liability, negligence, trespass, or nuisance against a prior occupier of the property for gasoline contamination of the property. The plaintiff in that case had entered into a lease agreement for commercial property for the purpose of opening and operating an automotive lubrication business. The lease agreement provided that the plaintiff was accepting the property "as is." Further, the plaintiff was aware at the time he entered into the lease that the property had been used as a gasoline station.

In preparing for the construction of his business, the plaintiff hired a testing company to perform a geotechnical study of the property to identify potential construction problems. In its geotechnical report, the testing company noted the presence of a very strong hydocarbon odor in soil and groundwater samples and recommended that a separate environmental study be performed. Based on environmental testing, it ultimately was determined that there was extensive petroleum contamination of the soil and groundwater on the property, and the plaintiff was unable to obtain the financing necessary to start his business. The plaintiff maintained claims for strict liability, negligence, trespass and nuisance against Exxon, the

former tenant of the property, for economic damages, including expenses incurred as a result of the contamination and lost future profits from his planned business.

The Court of Appeals upheld the circuit court's grant of summary judgment in favor of Exxon. The Court first traced the history of each of the torts and noted that, heretofore, they had protected only owners or occupiers of *neighboring* land from contamination of hazardous substances. Traditionally, there was no duty placed upon an owner or occupier of land to protect his own land from contamination. The Court refused to extend the torts to give a cause of action to subsequent occupants of contaminated land. Distinguishing between occupants of neighboring land and subsequent users of land, the Court noted:

> When an owner or occupier of land engages in activities which are related to such ownership and occupation and which are abnormally dangerous in relation to the particular site, we place upon the actor the burden of bearing the risk of any harm to neighbors which arises from the activity, notwithstanding the absence of fault on the part of the actor. This burden is justified when weighing the rights of the actor, who benefits from the activity, against those of the occupants of neighboring land, who do not benefit and have no way of avoiding the harm to their property that may result from a dangerous activity on adjacent land. Subsequent users, however, are able to avoid the harm completely by inspecting the property prior to purchasing or leasing it. Thus, it is not unreasonable to expect subsequent users to bear the risk of such harm. [Footnote omitted.] We think, however, that it would be unreasonable to hold the prior user liable to remote purchasers or lessees of commercial property who fail to inspect adequately before taking possession of the property.

*Rosenblatt,* 335 Md. at 74–75, 642 A.2d 180. The Court further noted that while the common law rule of *caveat emptor* has been legislatively abrogated in the context of residential property, it remains viable in Maryland with regard to the sale of commercial property. *Id.* at 75 n. 7, 642 A.2d 180 (citing

*Council of Co–Owners v, Whiting–Turner,* 308 Md. 18, 517 A.2d 336 (1986)). The Court noted that the plaintiff could have required testing of the property for contamination and could have negotiated express warranties into the lease. *Id.* at 78, 642 A.2d 180. He was in a position to avoid completely the alleged harm. *Id.*

Similarly, appellants in this case were in a position to avoid completely the alleged harm. Moreover, the policies undergirding *Rosenblatt* are even more compelling in the context of this case when, at least with respect to one of the parties, a purchaser seeks to avoid the terms of a contract of sale by subsequently suing the seller in tort for the condition of the land. At the time of sale, appellants knew that the property had been used as a gasoline station, and they could have taken precautions such as including express warranties in the contract. Consequently, the trial court dismissed all of appellants' common law counts against Auto Clean and Able in light of *Rosenblatt.* Appellants do not maintain that the trial court's ruling on those counts was in error. Instead, appellants argue that § 4–409(a) provides them with a private cause of action that they would not otherwise possess under the common law.

We begin our interpretation of § 4–409(a) by acknowledging the well-settled principle that statutes in derogation of the common law are to be strictly construed. *Dillon v. Great Atlantic & Pacific Tea Co.,* 43 Md.App. 161, 166, 403 A.2d 406 (1979). *See also City of Baltimore v. Hackley,* 300 Md. 277, 283, 477 A.2d 1174 (1984); *Gray v. State,* 43 Md.App. 238, 242, 403 A.2d 853 (1979).[1] As we stated in *Dillon,*

> it is not to be presumed that the legislature intended to abrogate or modify a rule of the common law on the subject any further than that which is expressly declared or clearly

1. Appellees Auto Clean and Able also argue that § 4–403 provides that subtitle 4–401, *et seq.,* shall not be construed to alter the common law. We read that section, however, to provide that the purpose of the subtitle is to provide additional and cumulative remedies, and that the subtitle should not be read to abridge or delimit remedies already existing at common law.

indicated, and the courts are inclined not to extend such statutes, by construction or implication, to situations or parties not fairly or clearly within their provisions, or any further than the language of the statute absolutely requires by express terms or necessary implication. The statute will not be construed to confer or enlarge any rights not clearly given.

*Dillon,* 43 Md.App. at 166, 403 A.2d 406 (quoting 73 American Jurisprudence 2d Statutes § 288). Accordingly, we will not presume that § 4–409(a) creates a private cause of action on behalf of subsequent owners or occupiers of land and against prior owners or occupiers of land unless the statute expressly so states.

■ Environment art., § 4–409(a), provides as follows:

(a) *Liability generally.*—The person responsible for the oil spillage shall be liable to any other person for any damage to his real or personal property directly caused by the spillage.

The express terms of the statute make persons responsible for oil spillage liable for property damage. While the statute does not expressly delimit the entities to which spillers of oil shall be liable, the concept of property damage contemplates that the damage occur while the claimant owns or occupies the property, and that the damage affect the value or use of the property. In this case, it is alleged that the spillage occurred prior to the Rossakis' purchase of the property. At the time of the alleged spillage, they did not own or occupy the property, and thus, did not sustain property damage as a result of the spillage. Instead, the Rossakis purchased already "damaged" property. Any devaluation of the property as a result of the alleged spillage occurred prior to the Rossakis' ownership, and thus, was not a loss in value sustained by them. Further, while in the possession of the Rossakis, the property never was fit for any use for which it then became unfit by virtue of the alleged spillage. Accordingly, even assuming that § 4–409(a) does create a private cause of action, we hold that it does not extend to subsequent

purchasers or occupiers of property. Section 4-409(a) does not expressly protect subsequent purchasers or occupiers of property, and any such protection is not conferred by the common law.[2]

Given our holding in this case, we need not decide whether appellants' allegations otherwise met the requirements of § 4-409(a), or whether appellants' action is barred by limitations.

## B.

### Negligent Misrepresentation and Contributory Negligence

The Rossakis argue that the jury findings of negligent misrepresentation and contributory negligence are inconsistent. They argue that the inconsistency was due to an erroneous jury instruction relating to reasonable reliance. Alternatively, the Rossakis argue that they had no duty to conduct any independent investigation and that they could rely on representations by NUS; thus, the jury's finding of contributory negligence was improper, apparently as a matter of law. We will consider each of these arguments in turn.

A party is entitled to have his or her theory of the case presented to the jury provided that the theory is supported by the law and by the facts of the case. *Shapiro v. Massengill*, 105 Md.App. 743, 661 A.2d 202, *cert. denied*, 341 Md. 28, 668 A.2d 36 (1995). Further, jury instructions need not take any particular form as long as they fairly cover the law and facts. *See Arundel Corp. v. Plater*, 236 Md. 322, 327-28, 203 A.2d 895 (1964); *Kaffl v. Moran*, 233 Md. 473, 478-79, 197 A.2d 240 (1964); *Lloyd v. Yellow Cab Co.*, 220 Md. 488, 492, 154 A.2d 906 (1959); *Rafferty v. Weimer*, 36 Md.App. 98, 110-11, 373 A.2d 64 (1977). *See also* Rule 2-520(c).

---

**2.** Because it is not before us, we do not address whether § 4-409(a) creates a private cause of action applicable to a violation that continues after the buyer's purchase of the property. If the statute does create a private cause of action, it is presumably applicable in that situation, although other remedies would ordinarily be available as well.

The particular instruction that appellants claim was in error is as follows:

Reliance on a representation is reasonable only if a person acting with reasonable prudence and caution would have relied on the representation and would have done no more to protect himself.

In deciding whether a lay person is reasonable in relying on the representation of a professional, the jury must first consider what was the scope of the professional undertaking. That in this case would be what was the scope of NUS' professional undertaking.

A lay person cannot discharge his duty to protect himself by closing his eyes and refraining from taking any action other than employing a professional when prudence requires that he should take independent measures to shield himself from harm.

Appellants' counsel excepted to this instruction at trial as follows:

The only exception I would make would be to the instruction on reasonable reliance in that I didn't see some of the language that was in there necessarily represented in the case that was cited, and I do think it involves evidence by a professional, whereas we have lay people here.

Appellants inform us that "the case that was cited" refers to *Wegad v. Howard Street Jewelers,* 326 Md. 409, 605 A.2d 123 (1992). Further, on appeal, appellants slightly rephrase their contention of error by stating that "[t]he Court's instruction pertaining to non-discharge of the duty to protect one's self was an incorrect statement of the law because one's reasonable or justifiable reliance on a professional satisfies the obligation to exercise reasonable care." Appellants cite *Wegad* for this latter proposition.

■■■ We believe that the trial court's instruction fairly covered the law as set forth in *Wegad* and was appropriate given the particular facts of this case. The Court of Appeals held in *Wegad* that the reasonableness of a client's reliance upon the advice of a professional must be considered in light

of the scope of the professional's undertaking, and further, that a client's reliance is reasonable only if a person acting with reasonable caution and prudence would have done no more to protect him or herself. *Wegad,* 326 Md. at 417–19, 605 A.2d 123. That is precisely what the trial court instructed the jury. Further, the instruction was supported by the evidence, as there was evidence that NUS had undertaken to investigate the soil only, rather than the groundwater, that Geo had issued a report wherein it recommended that the groundwater be tested, and that the Rossakis did not pay attention to the testing that was conducted on the property.

Moreover, we fail to see how the particular error that appellants allege resulted in inconsistent verdicts. Appellants argue that the verdicts are inconsistent because the jury found that the Rossakis justifiably or reasonably relied on the misrepresentation, whereas a finding of contributory negligence meant that their reliance was unreasonable. But the verdicts are not necessarily inconsistent, as the jury could have found that the Rossakis reasonably relied on NUS's representations on the one hand, but were contributorily negligent in failing to examine other information that was readily available to them. *Wegad* holds as much. Further, the Restatement (Second) of Torts recognizes that contributory negligence is a defense to negligent misrepresentation. *See Restatement (Second) of Torts* § 522A at 140 (1977). This section was cited with approval in *Wegad.* 326 Md. at 418, 605 A.2d 123.

In any event, in their exceptions to the trial court's instructions, appellants never argued that the court should more clearly distinguish and separate the issues underlying the negligent misrepresentation claim from those underlying the contributory negligence defense, and never argued that the instructions were confusing. Appellants never argued that contributory negligence cannot be a defense to negligent misrepresentation under the facts of this case, and indeed, appellants' counsel argued both issues to the jury in closing argument. Accordingly, appellants' current challenge to the

consistency of the verdicts is not properly preserved. Md. Rule 8–131(a).

Neither have appellants preserved their second issue. Appellants now maintain that, as a matter of law, they were not required to undertake a separate investigation, but could rely on NUS' representations. They further argue that the jury's finding of contributory negligence was a finding that appellants should have conducted a separate investigation. Preliminarily, we note that the cases upon which appellants rely are inapposite. *Gross v. Sussex, Inc.*, 332 Md. 247, 630 A.2d 1156 (1993), involved reversal of summary judgment, and *L. & P. Converters v. Alling & Cory Co.*, 100 Md.App. 563, 642 A.2d 264 (1994), involved the upholding of a trial judgment under the clearly erroneous standard. The Courts in those cases merely determined that the issue of whether the plaintiffs could rely on information to the exclusion of any investigation was a matter for the fact finder rather than a question that could be determined as a matter of law. *Gross*, 332 Md. at 270, 630 A.2d 1156; *L. & P. Converters*, 100 Md.App. at 569, 574, 642 A.2d 264. Indeed, in *Gross* the Court of Appeals acknowledged that there may be a duty to conduct an independent investigation " 'where, under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance or he has discovered something which should serve as a warning that he is being deceived.' " *Gross*, 332 Md. at 269, 630 A.2d 1156 (quoting W. Page Keeton et al., *Prosser and Keeton, on the Law of Torts* § 108 at 752 (5th Ed.1984)). In this case, there was evidence that appellants failed to review all of the reports that had been issued by the various testing companies, and had they reviewed such reports, they would have discovered that Geo recommended groundwater testing.

In order to now raise this issue as a point of error, appellants were required to either move for judgment at the close of all the evidence, Rules 2–519 and 2–532, or request an instruction regarding duty to investigate and except to the trial court's refusal to so instruct the jury. Appellants do not

contend that they took either of these steps, and our review of the record does not reveal that they took either of these steps. Accordingly, they did not properly preserve the issue of whether, as a matter of law, they were not required to conduct an independent investigation of the site.

JUDGMENTS AFFIRMED; APPELLANTS TO PAY COSTS.