779 A.2d 992

Kamran TAVAKOLI–NOURI,

v.

STATE of Maryland, et al.

No. 0048, Sept. Term, 2000.

Court of Special Appeals of Maryland.

Aug. 30, 2001.

720

Tavakoli-Nouri Kamran, Gaithersburg, for appellant.

Richard Kastendieck, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on the brief), Pikesville, for appellees.

Submitted before DEBORAH S. EYLER, ADKINS and KRAUSER, JJ.

ADKINS, Judge.

Complaining that he was wrongfully arrested on suspicion of cutting the seat of a taxi cab in which he was riding, Kamran Tavakoli–Nouri, appellant, filed suit *pro se* in the Circuit Court for Prince George's County for false arrest, false imprisonment, intentional infliction of emotional distress, invasion of privacy, violations of his "Legal Rights and Civil Rights," and national origin discrimination. He named as defendants (now appellees), Troopers Kevin Sinai and William Reaves of the Maryland State Police, the State of Maryland, the Maryland State Police, and the Motor Vehicle Administration (the "MVA").

Appellees moved to dismiss the complaint in its entirety, arguing that it failed to state a cause of action upon which relief could be granted and that the troopers were statutorily

immune from civil liability. After a hearing, the circuit court granted appellees' motion to dismiss. Appellant unsuccessfully moved to alter or modify judgment, and then noted this appeal.

We have consolidated and rephrased the questions appellant presented for our review.

I. Did the trial court err in concluding that appellant failed to state a claim upon which relief could be granted against any of the appellees?

II. Did the trial court err in concluding that, alternatively, Troopers Sinai and Reaves had statutory immunity to all of appellant's claims?

Although we agree that appellant failed to state any claims arising from the decision to arrest and search appellant, we conclude that the complaint adequately alleges facts sufficient to assert a claim that the force used to make the arrest was so excessive that it violated his constitutional rights under Article 24 of the Maryland Declaration of Rights. Appellant should have been given an opportunity to amend his complaint to set forth a separate count regarding his improper manner of arrest allegations. We shall vacate the judgment of the circuit court, and remand so that appellant has an opportunity to do so.

## FACTS

According to appellant's complaint, on August 25, 1998, he took a taxi cab to the MVA building in Beltsville, Maryland, planning to obtain a "Driver's License or Non–Driver ID card." While appellant was talking to an MVA supervisor, Trooper Kevin Sinai, who was a "security guard of that MVA office[,] approached [him] from behind and forcibly pulled [his] wrists behind his back and placed handcuffs on his wrists" without explanation. When appellant asked why he was being arrested, Sinai "refused to respond and failed to state a reason...." Along with Sinai, four more State police troopers "surrounded [appellant] at [the] MVA counter ... and K. Sinai dragged [appellant] while being handcuffed to a room at

the other end of the large hall of [the] MVA office...."
Appellant alleged that the troopers improperly "us[ed] unreasonable and excessive force in brutally making [the] ...
[a]rrest ... and dragging him across [the] MVA hall in handcuffs ... and conducting intrusive interrogations and unlawful searches in violation of ... all of [his] rights."

In the room, Trooper Reaves, "who was supervisor of the State Troopers present[,] conducted an unlawful and intrusive body search and search of [appellant's] briefcase," and emptied the contents of appellant's shorts on a table. Trooper Reaves then handcuffed appellant to a chair in the room. He told appellant "that [the] taxi driver who had brought him to MVA had called police claiming that a cut on the seat of his taxi was allegedly caused by him."

"Although thorough searches of [appellant's] briefcase and body ... proved that [appellant] did not have any sharp object with which he could have cut [the] seat," the troopers "continued detaining [appellant]...." A second search of the briefcase confirmed that appellant was not carrying a sharp object.

Despite the lack of any sharp object, appellant was then questioned about his "life and his past and future plans and ... his address and his intention for residing at that address and ... why [he] needed [a] Driver's License." Appellant responded that he was living temporarily in the Econo Lodge Motel in College Park, Maryland until he could "find[ ] permanent housing." The officers then called the manager of Econo Lodge to verify appellant's address. After an hour, they released appellant without charging him. The taxi driver never filed charges against appellant.

Appellant complained, unsuccessfully, to the trooper's supervisor and to the Governor's office. The Maryland State Treasurer denied his claims under the Maryland Tort Claim Act in June 1999. He filed this suit on August 10, 1999.

As a result of this incident, appellant claims, he was "obstructed ... from obtaining a[d]river's [l]icense or State issued ID card that was most needed for [cashing checks] and [other] transaction[s], and deprived ... [of] being able to ride his personal vehicle and [forced] to use public transporta-

tion...." In addition, because the "State Troopers gave [her] ... the idea that [he] was in trouble with [the] law ..., the manager of the Econo Lodge evicted him and called a nearby [inn] to advise them not to rent to appellant." Appellant had to move to another motel where the rate was more than $100 per week higher. Finally, appellant claims he "suffered emotional distress and anguish and lack of sleep."

## DISCUSSION

Appellant contends that the circuit court erred in granting appellees' motion to dismiss his complaint. "In considering a motion to dismiss for failure to state a claim under Maryland Rule 2–322(b)(2), a court must assume the truth of all well-pleaded material facts and all inferences that can be drawn from them." *Rossaki v. NUS Corp.*, 116 Md.App. 11, 18, 695 A.2d 203 (1997). The material facts setting forth the cause of action " 'must be pleaded with sufficient specificity. Bald assertions and conclusory statements by the pleader will not suffice.' " *Adamson v. Correctional Med. Svcs., Inc.*, 359 Md. 238, 246, 753 A.2d 501 (2000) (quoting *Bobo v. State*, 346 Md. 706, 708–09, 697 A.2d 1371 (1997)).

On appeal, we view the well-pleaded facts of the complaint "in the light most favorable to the appellant," *Parker v. Kowalsky & Hirschhorn, P.A.*, 124 Md.App. 447, 458, 722 A.2d 441 (1999), to determine whether the trial court was legally correct in dismissing the complaint. *Adamson*, 359 Md. at 246, 753 A.2d 501. "The grant of a motion to dismiss is proper [only] if the complaint does not disclose, on its face, a legally sufficient cause of action." *Rossaki*, 116 Md.App. at 18, 695 A.2d 203 (citation omitted).

## I.

### Sufficiency Of Allegations

Appellant's complaint names five different causes of action—false arrest, false imprisonment, intentional infliction of emotional distress, invasion of privacy, and violations of "Legal Rights and Civil Rights"—but does not set them forth in

separate counts. We shall consider whether appellant has alleged facts sufficient to state any of the causes of action he has attempted to plead.

## A.

### False Arrest And False Imprisonment

 Appellant claims that Troopers Sinai and Reaves falsely arrested and imprisoned him. The torts of false arrest and false imprisonment "share the same elements." *Okwa v. Harper,* 360 Md. 161, 189–90, 757 A.2d 118 (2000). Both torts require that the plaintiff prove that he was deprived of his liberty " 'without [his] consent and without legal justification.' " *Id.* (citations omitted).

Appellant alleged that he was arrested and detained, without a warrant, because the "taxi driver who had brought him to [the] MVA had called [the] police claiming that a cut on [the] seat of his taxi was allegedly caused by him." Maryland Code (1957, 1996 Repl.Vol., 2000 Cum.Supp.), Article 27, Section 594B(e) provides that

[a] police officer may arrest a person without a warrant if the officer has probable cause to believe:

(1) That an offense listed in subsection (f) of this section has been committed;

(2) That the person has committed the offense; and

(3) That unless the person is immediately arrested:

 (i) The person may not be apprehended;

 (ii) The person may cause injury to the person or damage to the property of one or more other persons; or

 (iii) The person may tamper with, dispose of, or destroy evidence.

Offenses listed in subsection (f) include misdemeanor destruction of property.[1] *See* Art. 27, § 594B(f)(1)(iii).

---

1. Article 27, section 111 provides that "[a]ny person who shall wilfully and maliciously destroy, injure, deface or molest any real or personal property of another shall be deemed guilty of a misdemeanor."

We have held that to make a lawful warrantless arrest for destruction of property, section 594B(e) "requires that the officer must have probable cause to believe not only that the offense was committed, but also that it was committed by the arrestee. In addition, the officer must have probable cause with respect to at least one of the three disjunctive factors listed in § 594B(e)(3)." *Howard v. State,* 112 Md.App. 148, 159–60, 684 A.2d 491 (1996), *cert. denied,* 344 Md. 718, 690 A.2d 524 (1997). Probable cause is " 'a non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify conviction but more evidence than that which would arouse a mere suspicion.' " *Id.* at 160, 684 A.2d 491 (citations omitted). It "does not demand the certainty associated with formal trials; it is sufficient that a 'fair probability' existed . . . . based on the factual and practical considerations of everyday life on which reasonable people act and is assessed by considering the totality of circumstances in a given situation." *Id.* at 160–61, 684 A.2d 491.

In this case, appellant's complaint reveals that the troopers had probable cause to believe that appellant had destroyed the personal property of another. Moreover, according to appellant's complaint, the police had reason to believe that appellant was in possession of a sharp object which he had just used to cut the seat of a taxicab. They, therefore, had reason to fear that he might use the same instrument to harm the person or property of another or that he might quickly dispose of such an instrument, which was evidence of a crime under investigation. Given appellant's presence in a public area, the concerns regarding possession and use of a sharp object, and the troopers' immediate removal of him to a nonpublic area, the complaint also establishes that there was probable cause to believe that, unless appellant was immediately arrested, he might "cause injury to the person or damage to the property" of another, or might "dispose of, or destroy evidence." *See* Art. 27, § 594B(e)(3)(ii) & (iii).

Because at least two of the three factors of § 594B(e)(3) were not satisfied, appellant failed to allege the elements of

false arrest and false imprisonment. Moreover, the facts set forth in his complaint actually support the conclusion that the police lawfully arrested him. Because appellant's arrest was lawful, the search that followed that arrest was incident to it. *See, e.g., Howard,* 112 Md.App. at 162, 684 A.2d 491 (valid search of person incident to warrantless arrest); *Reimsnider v. State,* 60 Md.App. 589, 597–98, 483 A.2d 1324, *cert. denied,* 302 Md. 681, 490 A.2d 719 (1985) (valid search of briefcase incident to warrantless arrest).

## B.

### Intentional Infliction Of Emotional Distress

To support a *prima facie* claim for intentional infliction of emotional distress, a plaintiff must show: (1) the conduct is intentional or reckless; (2) the conduct is extreme and outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; (4) the emotional distress is severe.

In order for distress to be sufficiently severe to state a claim for intentional infliction of emotional distress, "the plaintiff [must] show that he suffered a *severely* disabling emotional response to the defendant's conduct," and that the distress was so severe that "no reasonable man could be expected to endure it."

*Thacker v. City of Hyattsville,* 135 Md.App. 268, 315, 762 A.2d 172 (2000), *cert. denied,* 363 Md. 206, 768 A.2d 55 (2001) (quoting *Harris v. Jones,* 281 Md. 560, 566, 570–71, 380 A.2d 611 (1977)). Each element must be pled with specificity. *See Foor v. Juvenile Svcs. Admin.,* 78 Md.App. 151, 175, 552 A.2d 947, *cert. denied,* 316 Md. 364, 558 A.2d 1206 (1989).

Although appellant alleges that being dragged across the MVA hall in handcuffs caused him embarrassment and public humiliation, that the subsequent interrogation "caused him to feel inferior and ashamed about every answer he gave them," and that "[a]s the result of this traumatic incident [he] suffered emotional distress and anguish," he does not allege any facts that show that he had "a severely disabl-

ing emotional response," much less a distress so "severe that 'no reasonable man could be expected to endure it.'" *Thacker*, 135 Md.App. at 315, 762 A.2d 172. Nor do the facts alleged rise to the level of intentionally "extreme and outrageous" conduct necessary to plead this cause of action. *See, e.g., Ashton v. Brown*, 339 Md. 70, 116 n. 22, 660 A.2d 447 (1995) (arrest, search, and interrogation were not extreme or outrageous).

## C.

### Invasion Of Privacy

The Court of Appeals has held that, "[e]ven if we assume, *arguendo*, that [appellant's] arrest violated interests which the privacy tort is intended to protect," the key to whether the arrestee has a claim of invasion of privacy is the "'reasonableness under the facts presented'" of the arrest. *Ashton*, 339 Md. at 118, 660 A.2d 447 (citation omitted). Thus, if the arresting officers had a reasonable basis for the arrest and search, there is no cause of action for invasion of privacy. *See id.*

Even when we draw all inferences in appellant's favor, we cannot say that he has alleged facts sufficient to show that the search incident to the arrest was unreasonable. As we discussed *supra*, there was probable cause for both the decision to arrest and to search. We note that there are no facts in the complaint to suggest that the manner in which the search was conducted violated his privacy rights. Rather, appellant's privacy complaint appears to relate solely to the fact that he was searched without a warrant.

## D.

### Violation Of Appellant's "Civil Rights"

Where we part company with the trial court is on the question of whether appellant alleged facts sufficient to

state a cause of action for violation of his civil rights.[2] We hold that appellant's allegation that the police dragged him across the floor to the other end of the MVA office, under the circumstances alleged, presented a factual question as to whether the police utilized excessive force in their otherwise legal arrest of appellant. Such excessive force could be a violation of Article 24 of the Maryland Declaration of Rights, which provides that "no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." Excessive force in making an arrest is a violation of Article 24, for which a civil claim for damages may lie. *See Okwa v. Harper,* 360 Md. 161, 204, 757 A.2d 118 (2000).

When reviewing an original pleading, an appellate court "cannot sustain its dismissal if the facts therein set forth present, on their face, a legally sufficient cause of action." *See Shah v. HealthPlus, Inc.,* 116 Md.App. 327, 332, 696 A.2d 473, *cert. denied,* 347 Md. 682, 702 A.2d 291 (1997). Moreover, it is not essential for the plaintiff to identify the particular "legal name" typically given to the claim he has pled. The critical inquiry is not whether the complaint specifically identifies a recognized theory of recovery, but whether it alleges specific facts that, if true, would justify recovery under any established theory. Essentially, a complaint is sufficient to state a cause of action even if it relates "just the facts" necessary to establish its elements. This is consistent with the "notice" purpose of the modern complaint; "[a] pleading shall contain

---

2. Appellant's allegation of national origin discrimination consists of only the bare statement in his complaint that the arresting officers "were apparently prejudiced against Plaintiff's Iranian nationality for which reason they treated him inferiorly and discriminated against him." This statement is appellant's conjecture based on his characterization. "Bald assertions and conclusory statements by the pleader will not suffice" to withstand a motion to dismiss. *Adamson,* 359 Md. at 246, 753 A.2d 501. In the absence of any facts to support his claim of national origin discrimination, he has not stated a claim upon which relief could be granted.

only such statements of fact as may be necessary to show the pleader's entitlement to relief...." Md. Rule 2–303(b); *see Scott v. Jenkins*, 345 Md. 21, 28, 690 A.2d 1000 (1997).

 We recognize that police officers, when arresting a suspect, have the right to take reasonably necessary measures to make the arrest in a manner that protects both the public and themselves. *See Okwa*, 360 Md. at 199, 757 A.2d 118. In doing so, they may use some degree of force.

> This right to use a certain degree of force must be carefully analyzed in light of "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest."

*Id.* at 199–200, 757 A.2d 118 (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989)). In evaluating the use of force, we

> take the perspective of a reasonable officer on the scene of the incident at issue and pay close attention to the particular facts of each case. We consider whether the plaintiff posed an immediate danger to the public or the police and whether the plaintiff was resisting arrest, taking into account that due to the exigency of some circumstances, police officers may be forced to make split second decisions based on incomplete facts.

*Id.* at 204, 757 A.2d 118 (citations omitted). For example, " 'not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.' " *Saucier v. Katz*, — U.S. —, —, 121 S.Ct. 2151, 2160, 150 L.Ed.2d 272 (2001) (citation omitted).

Applying these standards to the circumstances of the instant case, we find that a reasonable fact finder could conclude that there was no "reasonable basis" for using this level of force to arrest and search appellant. Significantly, appellant alleges that he did not resist the arrest. Trooper Sinai approached appellant from behind, while he was transacting his business with an MVA supervisor, and handcuffed him behind his back. These actions he had a right to do based on

the information from the taxi driver. Putting on the handcuffs protected the police by depriving appellant of the ability to gain access to any sharp object or weapon that he may have had. The police also had a right to search him, incident to the arrest. It was reasonable, moreover, for the police to conduct this search in a more private place, away from the public area of the MVA.

With his hands constrained by handcuffs, however, appellant had no access to the sharp object he was suspected of carrying, and thus, that suspected sharp object was not such a threat to the police that they could not have asked him to walk[3] to the office for the search. The information held by the police did not reflect that appellant was a particularly violent person—he was suspected of committing a crime involving property damage (to the taxicab), not violence to a person. He was not acting in a threatening way before he was approached. Moreover, there were five police officers available to stop and subdue him, should he suddenly show violent tendencies. Under these circumstances, we conclude that dragging appellant from the place of arrest to the office could be viewed by a reasonable trier of fact as a use of excessive force in violation of Article 24. *See Okwa,* 360 Md. at 204, 757 A.2d 118 (plaintiff was dragged out of airline terminal, forced to the ground, struck in the head, and had his hands twisted by his thumbs).

Assessing the sufficiency of appellant's complaint, however, does require us to consider some procedural or "format" standards. Notwithstanding the liberal "fact pleading" standards, the Court of Appeals has adopted certain procedural pleading requirements. Relevant to this case, Md. Rule 2–303(a) provides that "[e]ach cause of action shall be set

---

3. Appellant asserted at the hearing on appellees' motion to dismiss, and in his brief, that, knowing he was using a wheelchair, the police denied him access to his wheelchair when dragging him across the room. We find no mention of a wheelchair in appellant's complaint, however, and thus we cannot consider this allegation on the motion to dismiss. Allegations regarding appellant's apparent disability, however, may be raised in an amended pleading, or otherwise considered at a subsequent motion or trial on the merits.

forth in a separately numbered count." Appellant failed to set forth each of his separate claims for false arrest, false imprisonment, intentional infliction of emotional distress, and violation of his civil rights in separate counts. Instead, he simply alleged these various theories collectively, via several references throughout his complaint. "The failure to state separate causes of action in separate counts is improper and renders the complaint deficient." P. Sandler & J. Archibald, *Pleading Causes of Action in Maryland* § 1.4, at 10 (2d ed.1998); *see Sommers v. Wilson Bldg. & Loan Ass'n*, 270 Md. 397, 401, 311 A.2d 776 (1973).

To the extent that appellant's complaint fails to set forth his improper manner of arrest claim in a separate count, therefore, dismissal may have been warranted on this technical ground. Nevertheless, this pleading defect was not the reason that appellees moved for dismissal, nor the reason the court granted it. In these circumstances, we do not find the dismissal to be warranted. We hold that the trial court erred in dismissing the complaint without leave to amend. The failure to plead separate counts should not be a fatal one given the ease with which it may be cured. Technical pleading defects that do not impede the defendants' right to be informed of the nature of the action against them do not warrant dismissal without leave to amend. *See* Md. Rule 2–341(c) ("Amendments shall be freely allowed when justice so permits. Errors or defects in a pleading not corrected by an amendment shall be disregarded unless they affect the substantial rights of the parties").

We shall vacate the judgment, and remand this case with instructions to allow appellant at least one opportunity to amend his complaint to assert, via whatever number of separate counts may be necessary, claims based on his "improper manner of arrest" allegations.

## II.

### Qualified Immunity

Appellant also complains that the trial court erred in holding that individual troopers could not be held liable be-

cause they had qualified immunity. We agree, because there is no qualified immunity from "constitutional torts" in violation of Article 24.

Although the trial court recognized that the complaint "pled ... that excessive force" was utilized, it held that dismissal was warranted because "[t]here is nothing within the [c]omplaint pled with specificity to warrant any finding of malice on the part of either trooper," and that as members of the Maryland State Police, they were entitled to qualified immunity. The trial court was correct, under applicable immunity laws, that in the absence of malice, police officers have statutory immunity against most of appellant's common law claims. *See* Md.Code (1984, 1999 Repl.Vol.), § 12–105 of the State Government Article ("SG") ("state personnel" have the qualified immunity established in Md.Code (1974, 1998 Rep. Vol.), § 5–522(b) of the Courts and Judicial Proceedings Article ("CJ")); *see also Shoemaker v. Smith,* 353 Md. 143, 157–58, 725 A.2d 549 (1999) (public official acting without malice has qualified immunity under federal civil rights laws, including 42 U.S.C. § 1983).

■■■ The court, however, erred in failing to recognize that appellees did not have qualified immunity from a claim made under the Maryland Declaration of Rights. Article 24 of the Declaration of Rights is Maryland's analogue to the Fourteenth Amendment of the United States Constitution. Unlike a federal claim under 42 U.S.C. section 1983, for violation of the Fourteenth Amendment to the U.S. Constitution, a claim under Article 24 against a state public official is not subject to a qualified immunity defense. *See Okwa,* 360 Md. at 201, 757 A.2d 118; *cf. Saucier v. Katz,* —— U.S. ——, —— – ——, 121 S.Ct. 2151, 2158–59, 150 L.Ed.2d 272 (2001) (qualified immunity applies to claim of excessive force in arrest, made under the Fourth Amendment and 42 U.S.C. § 1983). Thus, a police officer acting without malice may be liable for using excessive force in an arrest, in violation of Article 24 of the Maryland Declaration of Rights. Put conversely, there is not a "lack of

malice" defense to a "constitutional tort" claim alleging a violation of Article 24.

Accordingly, on remand, appellant may pursue "Article 24" claims against appellees. Although appellant's amended complaint would necessarily be limited to this more narrow type of claim, he might still allege claims against individual government defendants and appropriate State government entities. SG § 12–104 (waiving "immunity of the State and of its units," up to $200,000, in tort action based on non-malicious act of State personnel); CJ § 5–522(a) (immunity of the State is not waived under SG § 12–104 for .... "tortious act or omission of State personnel that is made with malice or gross negligence"); *State v. Card,* 104 Md.App. 439, 447, 656 A.2d 400, *cert. denied,* 339 Md. 643, 664 A.2d 886 (1995) (affirming vicarious liability judgment against State for torts of sheriff classified as "state personnel") *Sawyer v. Humphries,* 82 Md.App. 72, 84, 570 A.2d 341 (1990), *rev'd on other grounds,* 322 Md. 247, 587 A.2d 467 (1991) (State trooper "was under the umbrella of the Maryland Tort Claims Act," and therefore recovery against State possible).

**JUDGMENT VACATED, AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.**