919 A.2d 738

**LaSALLE BANK, N.A.**

v.

**Elizabeth A. REEVES, et al.**

**No. 0268 Sept. Term, 2005.**

Court of Special Appeals of Maryland.

March 2, 2007.

Reconsideration Denied April 26, 2007.

James J. Gorney, LaPlata, MD, for Appellant.

Elizabeth A. Reeves, Lexington Park, MD and Monica Haley–Pierson, Upper Marlboro, MD, for Appellee.

Panel: DEBORAH S. EYLER, SHARER and MEREDITH, JJ.

SHARER, Judge.

In the Circuit Court for St. Mary's County, appellant, LaSalle Bank, NA, filed an amended complaint for declaratory relief seeking reformation of a deed of trust which, appellant asserted, inaccurately described the property that secured the deed of trust. Named as defendants below were appellees, Elizabeth A. Reeves and the Delaware Tribe of Western Oklahoma.[1]

On grounds that the statute of limitations barred appellant's claim, the circuit court granted appellees' motion to dismiss.[2] In this timely appeal, appellant raises two issues which, as rephrased, are:[3]

1. Whether the circuit court erred in ruling that appellant's claim was barred by the three-year statute of limitations set forth in Md.Code Ann., Cts. and Jud. Proc. § 5–101.

2. Whether the circuit court erred in applying the statute of limitations for civil actions rather than applying the equitable doctrine of laches.

Appellees have raised an issue of jurisdiction and immunity:

---

**1.** The record reveals that the Delaware Tribe has never participated in this action. On June 29, 2004, the circuit court entered a judgment of default against the Delaware Tribe. But, see our discussion, *infra*, relating to jurisdiction and necessary parties. The presiding judge made it clear that Reeves was not to purport to represent the interests of the Tribe because, although licensed to practice in Pennsylvania, she is not a member of the Bar of Maryland. On November 15, 2005, this Court denied a motion by Reeves to appear for the Tribe *pro hac vice*.

The Delaware Tribe also discharged Reeves as its counsel on January 6, 2006. *See* Delaware Nation Resolution # 06–022. At oral argument, Reeves conceded that she had been "fired" by the Tribe.

**2.** As we shall note, appellee also moved for summary judgment. The adequacy of that motion was never addressed by the circuit court.

**3.** In its brief, appellant asks:

I. Did the Circuit Court err in ruling that LaSalle's claim was barred by the 3 year statute of limitations set forth in Md. Cts. & Jud. Proc.Code Ann. § 5–101?

II. Did the Circuit Court err in applying the statute of limitations for civil actions rather than applying the equitable doctrine of laches?

The tribal owner is entitled to its defense of immunity and the case must be dismissed.

For the reasons that follow, we shall reverse the judgment of the circuit court as it relates to the limitations/laches issue. Finding the want of a necessary party, we shall remand to the circuit court for further proceedings.

## FACTUAL and PROCEDURAL BACKGROUND

In our recital of the facts, we shall eliminate the somewhat serpentine series of transactions that ultimately gave rise to this litigation, and focus on the present parties.

Reeves owned an improved lot, consisting of three acres more or less, in Chaptico, St. Mary's County ("the Property"). In 1998, Reeves negotiated a loan, secured by a deed of trust on the Property. In 2000, Reeves applied to refinance the loan, to be secured by another deed of trust on the Property in the same amount. On February 24, 2000, a deed of trust was executed for the benefit of LaSalle's predecessor in interest, Residential Lending Corporation. The legal description set out in the deed of trust, however, was incorrect. In fact, the description defined a parcel consisting not of 3 acres, but of only 1.411 acres. The smaller parcel described, however, was within the larger parcel. On March 6, 2000, the refinanced loan, and all relevant documents, including the deed of trust, were assigned to LaSalle.

On April 23, 2002, for reasons not entirely clear from the record, Reeves executed a quitclaim deed, recorded among the land records of St. Mary's County, conveying any interest she held in the Property to the Delaware Tribe. Reeves defaulted in June 2002, and LaSalle instituted foreclosure proceedings. LaSalle "bought in" the Property at the foreclosure sale. In preparation for resale of the foreclosed Property, LaSalle discovered the mistake in the description in the deed of trust. In its amended complaint, filed on December 7, 2004, appellant asked the circuit court to reform the deed of trust by substi-tuting a correct description of the Property secured, encom-passing the entire three acres as intended by the parties, and

to impute the corrected description to the Property actually sold at the foreclosure sale. Appellees responded with a motion to dismiss.

The circuit court held hearings on February 16, 2005, and March 2, 2005. On March 2, the court granted Reeves's motion to dismiss, ruling that the claim was barred by the three-year statute of limitations.

## The Circuit Court's Ruling

The circuit court set forth its analysis in an oral opinion as follows:

Here, as I understand it, are the facts that are relevant to my ruling. I have been asked to reform a deed of trust signed on February 24, 2000, . . . [The] Deed of trust was signed by Ms. Reeves, deeding to Schedule A Trustee, . . . for [the] benefit of Superior Bank to collateralize a loan of some $300,000. The deed of trust before the Court, and filed in the land records of Saint Mary's County, deeded 1.41 acres as the . . . security for the loan. On July 21, 200[0] . . . Ms. Reeves filed a voluntary petition . . . in bankruptcy. Superior Bank, the predecessor to [appellant], moved . . . for relief from . . . the bankruptcy stay, the property known as lot five and seven as shown on a plat entitled White Plains Farm, which we all agree is the property in issue here, [and] also property shown as lots one, two and eight, White Plains Farm. In any event, no matter how described by the bankruptcy court, we all agree it is the property in issue here.

[ ] On February 5, 2001, a consent order granting relief from the stay as to 24889 Lucie Beall Lane . . . was . . . granted, [to] the plaintiff, Superior Bank, . . . lifting the stay on that property, and they proceeded to foreclosure. . . . [O]n November 10th, the year 2003, the [appellant] being the successor in interest to Superior Bank, to this deed of trust, and to the loan, filed in this Court a motion for declaratory relief, a complaint for declaratory relief, asking that this Court declare that the deed of trust, . . . be reformed because of a mutual mistake. And the

summary judgment asked that the Court-suggests to the Court that there is no disagreement as to the facts in this case[.] [Reeves] filed a motion, ... to dismiss as being beyond the time period provided in the statute of limitations[.] The problem is, the statute she cited was for the civil actions, absent specialities, and that is the three year statute that controls civil actions. If this case is such a civil action as the statute of limitations refers to, then the timing herein makes her correct and this matter must stand dismissed. And I thought that was going to be rather easy until I did some research, realizing that this is an equitable action. Then the question is, does the doctrine of laches control?

Laches is a—doctrine that denies to parties the use of the Court if they sleep on their rights. And by doing so, there would be some injury to the other party. So issues I have to decide are essentially, one is the civil, the statute of limitations for civil filing controlling. If that is not controlling, what is the term of laches that would be reasonable in this case, or does laches even apply to this case, and then is reformation in order?

\* \* \*

If when the courts, when equitable actions were abolished in [19]84 by being merged into law actions, bring us pretty much in line with then the federal system, procedure. They did not abolish the equitable principles and doctrines. However, the statute of limitations, there was no curing statute for the doctrine of laches, and though I think [counsel for appellant] is correct, that if latches [sic] were [sic] the controlling doctrine, I don't think laches would apply in this case, I don't think [the time] would have run because I do not find there to be any injury whatsoever to the [appellees] in this case. The [appellees] would really be put in the position they intended to be in the first place.

\* \* \*

So I find that the doctrine of laches, if it were applicable to this case, laches would not have yet run because there is no harm done to the defendant. However, I find the

doctrine of latches [sic] does not control. I find that the civil—the statute of limitations as to the civil actions ... does control[.] And, therefore, this case was filed beyond that statute, and for that reason, will have to be dismissed. However, I make a further finding to make it a little bit simpler on whoever may be reviewing this, in that statute, as I have ruled it does, does not apply to this case. And if I, as I have ruled that laches would not have run, reasonably run at this point because there is no harm to the [appellee] then I would have been compelled by the facts before me to grant [appellant's motion for] summary judgment because it is clearly set out in sworn testimony of the [appellee] that she intended the very relief, she intended the very facts to exist that the relief seeks to accomplish. In plain English, she says in her deposition she meant to deed the 3 acres that she put the yellow line around. She says that under oath. Actually, I shouldn't be taking testimony today but I allowed her to get on the-I ordered her to get on the witness stand to testify, but the bottom line is I think that has to be dismissed because I believe the statute of limitations controls.

## PROCEDURAL HISTORY

We shall refrain from confusing the reader with a detailed recital of the myriad motions, responses, and other pleadings filed in the circuit court, many of which, facially, appear to approach being frivolous. It is sufficient for the purpose of this opinion to note that appellant filed a complaint, and later an amended complaint, for declaratory relief, seeking, in essence, reformation of the erroneously drawn deed of trust. After a good deal of paper skirmishing, the matter came on for hearing in the circuit court on appellant's amended complaint for declaratory judgment and Reeves's motion to dismiss.

The hearing below proceeded with the argument of counsel, at least to the point at which the court invited Reeves to become a witness. That, in our view, amounted to consideration by the court of matters outside the pleadings and served

to convert the motion to dismiss to a motion for summary judgment. *See* Md. Rule 2–322(c); *Vogel v. Touhey,* 151 Md.App. 682, 703–04, 828 A.2d 268 (2003). Hence, we shall review the circuit court's findings and judgment under the standard prescribed for summary judgment proceedings.[4]

## STANDARD of REVIEW

In reviewing a grant of summary judgment, we are concerned with whether a dispute of material fact exists. *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.,* 335 Md. 135, 144, 642 A.2d 219 (1994). "A material fact is a fact the resolution of which will somehow affect the outcome of the case." *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985) (citing *Lynx, Inc. v. Ordnance Prods., Inc.,* 273 Md. 1, 8, 327 A.2d 502 (1974)). "[A] dispute as to facts relating to grounds upon which the decision is not rested is not a dispute with respect to material fact and such dispute does not prevent the entry of summary judgment." *Salisbury Beauty Schs. v. State Bd. of Cosmetologists,* 268 Md. 32, 40, 300 A.2d 367 (1973). In the

---

**4.** Had we conducted our review under the motion to dismiss standard, the result would be the same. "The court must accept as true all well-pleaded material facts in the complaint, as well as any reasonable inferences that may be drawn therefrom. Any ambiguity in the allegations bearing on whether the complaint states a cause of action must be construed against the pleader."; *see also Morris v. Osmose Wood Preserving, et al.,* 99 Md.App. 646, 653, 639 A.2d 147 (1994) ("[i]f facts are alleged that, if proved, would entitle plaintiffs to relief, then the motion to dismiss was improperly granted.") (citing *Stone v. Chicago Title Ins. Co.,* 330 Md. 329, 624 A.2d 496 (1993)).

As set forth in *Rivera v. Prince George's County Health Dep't,* 102 Md.App. 456, 472, 649 A.2d 1212 (1994), the appropriate standard of review of the circuit court's grant of the motion to dismiss is:

A motion to dismiss lies where there is no justiciable controversy. "The appropriate standard of review of the grant or denial of a motion to dismiss is whether the well-pleaded allegations of fact contained in the complaint, taken as true, reveal any set of facts that would support the claim made." Moreover, "[i]f any material facts alleged in [the] complaint tend to support her right to recover, the order to dismiss must be reversed; we limit our consideration ... to allegations of fact and the inferences deducible therefrom, and not 'merely conclusory charges.' "

(Citations omitted); *see also Tavakoli–Nouri v. State,* 139 Md.App. 716, 725, 779 A.2d 992 (2001).

instant case, the parties concede the lack of dispute of a material fact. In fact, both parties moved for summary judgment.

The Court of Appeals also has stated that "the standard of review for a grant of summary judgment is whether the trial court was legally correct." *Goodwich v. Sinai Hosp. of Baltimore, Inc.,* 343 Md. 185, 204, 680 A.2d 1067 (1996). The trial court, in accordance with Md. Rule 2–501(e), shall grant a motion for summary judgment "if the motion and response show that there is no genuine dispute as to any material fact and that [the moving party] is entitled to judgment as a matter of law." The purpose of the summary judgment procedure is not to try the case or to decide the factual disputes, but to decide whether there is an issue of fact which is sufficiently material to be tried. See *id.* at 205–06, 680 A.2d 1067; *Coffey v. Derby Steel Co.,* 291 Md. 241, 247, 434 A.2d 564 (1981); *Berkey v. Delia,* 287 Md. 302, 304, 413 A.2d 170 (1980). Thus, once the moving party has provided the court with sufficient grounds for summary judgment, the non-moving party must produce sufficient evidence to the trial court that a genuine dispute to a material fact exists. *See, e.g., Hoffman Chevrolet, Inc. v. Washington County Nat'l Sav. Bank,* 297 Md. 691, 712, 467 A.2d 758 (1983). This requires "produc[ing] facts under oath, based on personal knowledge of the affiant to defeat the motion. Bald, unsupported statements or conclusions of law are insufficient." *Id.* With these considerations in mind, we turn to the case *sub judice.*

## TRIBAL IMMUNITY/JURISDICTION

Before discussing the substantive question of whether the circuit court erred in applying the statute of limitations, rather than laches, to appellant's claim, we shall address the threshold issue of the potential immunity of the Delaware Tribe from state court action, and the resulting questions of jurisdiction and necessary parties.[5] *See Mahan v. Mahan,* 320 Md. 262,

---

**5.** Md. Code Ann., Cts. & Jud. Proc. (C.J.) § 3–405(a)(1) (2006 Repl. Vol.) states:

273, 577 A.2d 70 (1990) ("Failure to join a necessary party constitutes a defect in the proceedings that cannot be waived by the parties, and may be raised at any time, including for the first time on appeal."); *see also* Md. Rule 2–324.

Reeves argues to this Court that "the [circuit court] could not escape impacting the land rights of the Delaware Nation as well as their tribal immunity in this suit and therefore trigger federal question jurisdiction." Reeves further argues that the Delaware Tribe was a necessary party to this litigation, given the existence of the quitclaim deed, and that, in view of the United States Supreme Court's decisions in the area of tribal immunity from suit in state courts, the circuit court incorrectly entertained arguments in this case which could affect the rights of the tribe. *See Kiowa Tribe of Okla. v. Mfg. Techs., Inc.,* 523 U.S. 751, 760, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998).

As we have noted, certain Indian tribes are immune from the jurisdiction of the state courts. *See Wolfchild v. United States,* 72 Fed.Cl. 511, 536 (2006). Immunity is afforded only those tribes that are included on a roster ("the List") that is created pursuant to the Federally Recognized Indian Tribe List Act of 1994, 25 U.S.C, §§ 479a *et seq.* ("the Act"). The List is maintained by the Department of the Interior ("DOI") and the DOI is granted jurisdiction to add to, or delete from, the list particular tribes or nations, in compliance with the procedures established by the federal Administrative Procedure Act ("the APA"), and properly published.

The status of the Delaware Tribe was uncertain until it was added to the List by the DOI in September 1996. "[T]he Delaware Tribe of Indians is a tribal entity recognized and eligible for funding and services from the Bureau of Indian Affairs by virtue of its status as an Indian Tribe." 61 Fed. Reg. 50, 863 (Sept. 27, 1996). Soon thereafter, however, the Cherokee Nation filed suit against the DOI, asserting that the

---

If declaratory relief is sought, a person who has or claims any interest which would be affected by the declaration, shall be made a party.

agency violated provisions of the APA by extending recognition to the Delawares. *See Cherokee Nation of Okla. v. Babbitt,* 944 F.Supp. 974 (D.D.C.1996). Following a ruling on procedural grounds, the litigation was transferred to the District Court for the Northern District of Oklahoma.

On appeal, the U.S. Court of Appeals for the Tenth Circuit conducted an extensive, and instructive, explication of the history of the affinity of the Delawares and the Cherokee Nation, based upon two memorialized events. The first was an 1866 treaty between the United States government and the Cherokee Nation; the second was an "Articles of Agreement" between the Cherokee Nation and the Delawares, executed on April 8, 1867, and properly ratified by President Andrew Johnson. The Articles of Agreement called for the consolidation of the Delawares within the Cherokee Nation. *Cherokee Nation of Okla. v. Norton,* 389 F.3d 1074, 1079–81 (10th Cir.2005). The *Norton* Court, quoting from *Cherokee Nation v. Journeycake,* 155 U.S. 196, 210–11, 15 S.Ct. 55, 39 L.Ed. 120 (1894), noted that "the 'Delawares became incorporated into the Cherokee Nation, and are members and citizens thereof[.]' " *Norton, supra,* 389 F.3d at 1081.

The Tenth Circuit, applying the 1866 treaty, the 1867 agreement, and *Journeycake,* held that the DOI, in placing the Delawares on the Federally Recognized Indian Tribe List, had violated the Tribe List Act, and ordered the listing voided.[6] *Id.* at 1087. In compliance with that decision, the DOI removed the Delaware Tribe from the List. 70 Fed. Reg. 226, 71194 (November 25, 2005). Therefore, at the time the Circuit Court for St. Mary's County dismissed appellant's complaint for declaratory judgment, the Delaware Tribe was no longer a recognized tribe and was, in the abstract, subject to the jurisdiction of the state court. However, because of the effect

---

6. The Tenth Circuit opinion was filed on November 16, 2004, but was amended on denial of a motion for rehearing, on February 16, 2005. In the interim, appellant's amended complaint for declaratory relief was filed on December 7, 2004. The matter was heard in the circuit court on February 16, 2005, the day on which the judgment in *Norton* became final.

of *Norton, supra,* and the subsequent action of the DOI, the Delaware Tribe had been subsumed into the Cherokee Nation. Thus, in our view, the Cherokee Nation became a necessary party to the instant declaratory judgment action.

For that reason, we shall hold that there is the want of a necessary party, and remand to the circuit court for further appropriate proceedings, to include whether jurisdiction lies in the circuit court or in federal court.

## LIMITATIONS OR LACHES? [7]

### The Merger of Law and Equity, the Doctrine of Laches, and Statutory Limitations

Because resolution of appellant's issues requires analysis of interrelated concepts, we shall consider the issues as one, rather than separately. In this appeal we are confronted by considerations of the merger of law and equity, as applied to a purely equitable proceeding, in the context of the doctrine of laches *vis a vis* the application of statutory limitations to actions at law. The circuit court, by granting Reeves's motion to dismiss, essentially ruled that, as a result of the merger, the doctrine of laches was inapplicable to appellant's claims as a matter of law. We believe that ruling to be erroneous.

"The merger of law and equity was accomplished in this State on July 1, 1984, as part of a comprehensive revision of the Maryland Rules of Procedure." *Higgins v. Barnes,* 310 Md. 532, 534, 530 A.2d 724 (1987); *see also* Md. Rule 2–301 ("There shall be one form of action known as 'civil action.'"). "The effect of this Rule is to eliminate distinctions between law and equity for purposes of pleadings, parties, court sittings, and dockets." Comm. note to Md. Rule 2–301. Further,

The merger of law and equity that was carried out by the 1984 revision of the Maryland Rules of Procedure was not

---

**7.** Although not required for our disposition of this appeal, we shall discuss the substantive issues for guidance of the circuit court on remand, should those issues be reached.

intended to abolish all differences between legal and equitable claims and the defenses to them, but only to abolish the pleading distinctions between law and equity and to assure that all claims and defenses are determined in one court. Thus, while the merger makes possible the joinder in a single action of claims previously cognizable only as separate actions at law or in equity, it does not avoid the occasional necessity of identifying the character and historical genesis of each claim for purposes of determining entitlement to a jury trial, the extent of jurisdiction, the application of particular principles, or the like.

9 Maryland Law Encyclopedia, *Equity* § 5 (2000) (citing, *inter alia, South Down Liquors, Inc. v. Hayes,* 80 Md.App. 464, 564 A.2d 119 (1989), *aff'd on other grounds,* 323 Md. 4, 590 A.2d 161 (1991)).

■ As a starting point for our analysis, we quote Judge Battaglia's considerable discussion of the doctrine of laches in *Ross v. Board of Elections,* 387 Md. 649, 668–70, 876 A.2d 692 (2005):

Laches "is a defense in equity against stale claims, and is based upon grounds of sound public policy by discouraging fusty demands for the peace of society." *Parker v. Board of Election Supervisors,* 230 Md. 126, 130, 186 A.2d 195 (1962). The doctrine of laches arose out of the equity courts of England and developed during a period in which equity courts were not subject to statutes of limitations passed by Parliament. Because stale demands, usually involving the loss of witnesses or records, offended the Chancellor's sense of fairness, courts of equity customarily refused to grant an equitable remedy in appropriate cases.

\* \* \*

■ In *Buxton v. Buxton,* 363 Md. 634, 770 A.2d 152 (2001), we recently had the opportunity to examine the elements of laches:

[T]he word, itself, derives from the old French word for laxness or negligence. . . . The passage of time, alone, does not constitute laches but is simply 'one of many

circumstances from which a determination of what constitutes an unreasonable and unjustifiable delay may be made.' In that regard, there is a relationship between laches and the statute of limitations, although the statute does not govern.

We held that, '[i]n a purely equitable action, a lapse of time shorter than the period of limitations may be sufficient to invoke the doctrine; and, where the delay is of less duration than the statute of limitations, the defense of laches must include an unjustifiable delay and some amount of prejudice to the defendant.' 'What amounts to "prejudice," such as will bar the right to assert a claim after the passage of time, depends upon the facts and circumstances of each case, but it is generally held to be any thing that places him in a less favorable position.' *Id.* Finally ... we stated in *Parker* that 'since laches implies negligence in not asserting a right within a reasonable time after its discovery, a party must have had knowledge, or the means of knowledge, of the facts which created his cause of action in order for him to be guilty of laches.'

*Buxton,* 363 Md. at 645–46, 770 A.2d 152 (emphasis in original; citations omitted). Moreover, "even where such impermissible delay is present under the circumstances presented, if the delay has not prejudiced the party asserting the defense, it will not bar the equitable action." *Schaeffer v. Anne Arundel County,* 338 Md. 75, 83, 656 A.2d 751 (1995). Thus, for laches to bar [the] action there must be both an inexcusable delay and prejudice to Respondents.

We recognize, nevertheless, that generally courts sitting in equity will apply statutory time limitations. *Courts exercising equity jurisdiction, however, are not irrevocably bound to the statutory time limitations. See Stevens v. Bennett,* 234 Md. 348, 351, 199 A.2d 221 (1964) (stating, "even when the remedy for a claimed right is only in equity the period of limitations most nearly apposite at law will be invoked by an equity court, provided there is not present a more compelling equitable reason—such as fraud or inequi-

table conduct which would cause injustice if the bar were interposed—why the action should not be barred"); *Parker,* 230 Md. at 130, 186 A.2d 195, (holding, "[i]n a purely equitable action, a lapse of time shorter than the period of limitations may be sufficient to invoke the doctrine; and, where the delay is of less duration than the statute of limitations, the defense of laches must include an unjustifiable delay and some amount of prejudice to the defendant"). *Thus, the courts are free, if the equities so require, to assess the facts of a purely equitable action independent of a statutory time limitation applicable at law.*

(Citations omitted.) (emphasis added).

*Ross* clearly supports the notion that, despite the merger of law and equity, the doctrine of laches is very much alive, and that statutes of limitations serve, generally, as a guideline to the application of laches, rather than as a complete abrogation of the doctrine. *See Payne v. Prince George's County Dep't of Soc. Servs.,* 67 Md.App. 327, 335, 507 A.2d 641 (1986) ("an appropriate legal statute of limitations will be applied by analogy in equity [proceedings] . . . [and] [t]he 'merger' of law and equity procedures achieved by Md. Rule 2–301 has not affected the viability or the applicability of this doctrine."); *see also Desser v. Woods,* 266 Md. 696, 704, 296 A.2d 586 (1972)("the equity courts will follow, by analogy, the period of limitations applicable to actions at law.").

 The general rule of application by analogy is applied in cases where directly concurrent legal and equitable jurisdiction exists.[8] *See Schaeffer v. Anne Arundel County,* 338 Md. 75, 81, 656 A.2d 751 (1995) ("Choosing the applicable measure

---

8. We note also that laches "may be applied, in equity, to bar an action even though *less* time has elapsed than that required to invoke an applicable statute of limitations." *Payne, supra,* 67 Md.App. at 338, 507 A.2d 641 (emphasis added). But "[w]hen the time involved is less than the period of the statute of limitations involved, the equity courts will not sustain the defense of laches raised by demurrer unless it appears on the face of the bill of complaint that the defendant has been prejudiced by an unreasonable delay in the assertion of the plaintiff's rights." *Desser, supra,* 266 Md. at 703–04, 296 A.2d 586.

of impermissible delay for cases where an equitable remedy is sought is most straightforward in cases when there are concurrent legal and equitable remedies and the applicable statute of limitations for the legal remedy is equally applicable to the equitable one."); *see also Stevens v. Bennett,* 234 Md. 348, 351, 199 A.2d 221 (1964)("we think the appellant had a remedy at law analogous to and concurrent with the one he sought in equity, and it is clear that in such a case equity follows the law and applies the period of limitations which would operate in the analogous suit at law."). The rationale for the rule was discussed in *Grandberg v. Bernard,* 184 Md. 608, 611, 42 A.2d 118 (1945):

> [I]f the remedy sought in equity is analogous to a remedy cognizable at law, and the statute of limitations prescribes a time within which the legal action must be instituted, equity will follow the law and bar the action. If this were not so a litigant could circumvent the statute by by-passing the law courts and bring his case in equity.

In other cases, where no such direct analogue is present, statutory limits are used as a guide in applying the doctrine of laches to equitable claims, but courts evaluating such claims are not irrevocably bound to such limits. As noted, *supra,* the *Ross* Court concluded that "the courts are free, if the equities so require, to assess the facts of a purely equitable action independent of a statutory time limitation applicable at law." [9] 387 Md. at 670, 876 A.2d 692. For example, in *Schaeffer, supra,* 338 Md. at 83, 656 A.2d 751, the

---

**9.** Reformation of contract is a purely equitable action. "It is a settled principle that a court of equity will reform a written instrument to make it conform to the real intention of the parties, when the evidence is so clear, strong and convincing as to leave no reasonable doubt that a mutual mistake was made in the instrument contrary to their agreement." *Hoffman v. Chapman,* 182 Md. 208, 210, 34 A.2d 438 (1943); *see also Kolker v. Gorn,* 193 Md. 391, 398–99, 67 A.2d 258 (1949). Further, "[e]quity reforms an instrument not for the purpose of relieving against a hard or oppressive bargain, but simply to enforce the actual agreement of the parties to prevent an injustice which would ensue if this were not done." *Hoffman, supra,* 182 Md. at 211, 34 A.2d 438.

Court of Appeals applied the general three-year statute of limitations, under Md.Code Ann., Cts. and Jud. Proc. § 5–101, as a guideline in an action filed after the three-year limitations period had run. The *Schaeffer* Court invoked the application of laches, finding extreme prejudice resulting from the delay. *Id.* at 83–84, 656 A.2d 751. What is significant to the case *sub judice* is that the Court's application of the three-year statute was not absolute, and considerations under the doctrine of laches were ultimately determinative. *See id.* at 84, 656 A.2d 751.

■ An evaluation of laches is not based simply on the length of time elapsed. In general, there is no inflexible rule as to what constitutes laches, and hence the existence of laches must be determined on the facts and circumstances peculiar to each case. *See Parker v. Board of Election Supervisors*, 230 Md. 126, 130, 186 A.2d 195 (1962).

Furthermore, unlike the defense of limitations in an action seeking a legal remedy, the defense of laches to the assertion of an equitable remedy must be evaluated on a case by case basis, as laches is an *inexcusable* delay, without necessary reference to duration in asserting an equitable claim. Moreover, even where such impermissible delay is present under the circumstances presented, if the delay has not prejudiced the party asserting the defense, it will not bar the equitable action.

*Schaeffer, supra,* 338 Md. at 83, 656 A.2d 751 (citations omitted).

### The Pleadings

The circuit court was concerned with whether appellant's action was, in fact, properly brought as an equitable one *ab initio.* We believe the confusion to have arisen as a result of appellant's prayer for declaratory relief in its amended complaint, and may well have influenced the court's conclusion to eliminate application of the doctrine of laches.[10]

---

10. The circuit court engaged in the following exchange with appellee:

█ Md. Rule 2–303(b) requires that a pleading "be simple, concise, and direct. No technical forms of pleadings are required. A pleading shall contain only such statements of fact as may be necessary to show the pleader's entitlement to relief or ground of defense." Md. Rule 2–305 commands that "[a] pleading that sets forth a claim for relief . . . shall contain a clear statement of the facts necessary to constitute a cause of action and a demand for judgment for relief sought . . . Relief in the alternative or of several different types may be demanded." The purpose of the pleading rules is to ensure "that parties . . . may be mutually apprised of the matters in controversy between them." *Pearce v. Watkins,* 68 Md. 534, 538, 13 A. 376 (1888) (citations omitted). In *Scott v. Jenkins,* 345 Md. 21, 27, 690 A.2d 1000 (1997), the Court of Appeals outlined the policy of pleading rules in Maryland:

Although Maryland abandoned the formalities of common law pleading long ago, it is still a fair comment to say that

---

THE COURT: I know what she is talking about. You talked—identified under the declaratory judgment, but the cause of action is one of reformation, which is an equitable action. There is no statute controlling that because that comes to us through the common law. He wants me to declare this statute—he wants me to declare that deed of trust reformed, but what it comes down to, your argument that they filed beyond the statute of limitations. And I will say as a matter of finding, that indeed they did file their action beyond three years from the time that the deed of trust was created, and the error should have, with reasonable due diligence, have been discovered. You agree with that part of the argument?

\* \* \*

[APPELLEE REEVES]: Because it is not a contract but it is reformation of a deed, and the deed is a declaratory relief, is statutory relief. Therefore, he is saying for statutory, he is depending upon—the jurisdiction he is depending on is not contract action, it is declaratory relief because under contract theories, [the] mutual mistakes voids [sic] the contract. So the reason Maryland Legislature enacted this was to give relief for a mutual mistake on a deed. So there has to be—so the jurisdiction, I say, is still the declaratory relief under the Maryland Statute.

THE COURT: Which you say is the civil action which you say should be controlled by the three years statute?

[APPELLEE REEVES]: Right, because it has to do with declaratory relief under the Maryland Statute, therefore, the Maryland Statute of limitations should apply.

pleading plays four distinct roles in our system of jurisprudence. It (1) provides notice to the parties as to the nature of the claim or defense; (2) states the facts upon which the claim or defense allegedly exists; (3) defines the boundaries of litigation; and (4) provides for the speedy resolution of frivolous claims and defenses. Of these four, notice is paramount.

(Internal citations omitted); *see also Ledvinka v. Ledvinka,* 154 Md.App. 420, 429, 840 A.2d 173 (2003); *Tavakoli–Nouri, supra,* 139 Md.App. at 730, 779 A.2d 992 ("Essentially, a complaint is sufficient to state a cause of action even if it relates 'just the facts' necessary to establish its elements.").

■■■ A declaratory judgment can be obtained either at law or in equity. *Himes v. Day,* 254 Md. 197, 206, 254 A.2d 181 (1969). "The determination of whether the action is properly at law or in equity must be made by an examination of the nature of the claim asserted and the relief requested." *Fisher v. Tyler,* 24 Md.App. 663, 668–69, 332 A.2d 265 (1975) (reversing decision to transfer a declaratory action from law to equity where the Court found the case related to a legal cause of action (breach of contract) rather than a cause of action sounding in equity (reformation)); *see also Verona Housing, Inc. v. St. Mary's County Metro. Comm'n,* 45 Md.App. 421, 431, 413 A.2d 270 (1980).

Expanding on this proposition, 26 C.J.S. *Declaratory Judgments* § 109 (2006) opines that:

A suit for a declaratory judgment is neither legal nor equitable, but is sui generis, and is neither wholly a suit in equity nor wholly an action at law. Declaratory relief may take on the color of either equity or law, depending on the issues presented and the relief sought; that is, a declaratory judgment action assumes the nature of the controversy at issue. The legal or equitable nature of a declaratory judgment proceeding thus may be determined by the pleadings, the relief sought, and the nature of each case. When proceedings for a declaratory judgment are in the nature of equity, appropriate equitable principles are called into play,

whereas when such proceedings are in the nature of an action at law, legal principles are used for the determination of the issues presented.

A petition for a declaratory judgment is not a proceeding in equity merely because in form the procedure may be equitable, since declaratory relief is available either in courts of equity or in courts of law. A proceeding for a declaratory judgment is not converted into an equitable action merely because the court may grant a temporary restraining order to maintain the status quo pending an adjudication with respect to the rights, status, and other legal relations of the parties. Likewise, an issue that is essentially legal in nature is not transformed into an equitable one by virtue of the fact that declaratory, rather than affirmative, relief is sought. However, the action must be brought in the court which has jurisdiction of the subject matter.

Though appellant's complaint sought statutory relief in the form of a declaration of rights, it raised the purely equitable cause of action of reformation and should be construed as such because such equitable relief was properly invoked. In *Ver Brycke v. Ver Brycke,* 379 Md. 669, 697, 843 A.2d 758 (2004), the Court stated:

> We also have held that the parties' characterization of their claims does not determine equity jurisdiction; rather, ... equity jurisdiction is determined by whether the parties' claims have historically sounded in equity or by the kind of remedy the parties sought.

"A proper case for the reformation of instruments must be made by the pleadings, and, in order to make out a good cause of action, the pleading should allege in clear ... language ... every element necessary to entitle the complainant to equitable relief." 76 C.J.S. *Reformation of Instruments* § 77 (2006); *Bartlett v. Dep't of Transp.,* 40 Md.App. 47, 52, 388 A.2d 930 (1978) (agreement contemplated must be shown by clear and convincing evidence). "For reformation to be granted, it is necessary under some authority that a specific request for

equitable relief, or a plea for reformation be made, but under other authority the remedy is available despite the absence of a specific request in the pleadings." 76 C.J.S. *Reformation of Instruments* § 77 (2006).

■ Those statements clearly reflect the state of Maryland law. Because appellant's amended complaint contained allegations sufficient to sustain an action for reformation, appellant's prayer for relief can be properly construed as a request for equitable relief. Further, appellee Reeves was sufficiently on notice of the cause of action. Thus, we are satisfied that appellant's complaint for declaratory relief did not limit the circuit court to the application of statutory limitations, to the exclusion of laches.

■ Although we disagree with the circuit court's application of the three-year civil statute of limitations, we agree with the court's finding that the delay occasioned no harm to Reeves. Records and witnesses to the transaction are still available. And, most significantly, Reeves herself testified that it was the intent of the parties—lender and borrower—to secure the debt by a deed of trust on the entire three acre parcel. As we noted, *supra*, the testimony elicited from Reeves caused the court to consider matters outside the four corners of the complaint, and thus effectively converted her motion to dismiss to a motion for summary judgment. The circuit court's ruling that there existed no genuine dispute of material fact is sound and is supported by the record. We are likewise satisfied that the circuit court's finding:

> if laches were the controlling doctrine, I don't think laches would apply in this case, I don't think [the time] would have run because I do not find there to be any injury whatsoever to the defendant[s] in this case. *The defendant[s] would really be put in the position they intended to be in the first place.*

(Emphasis added.)

Therefore, we shall reverse the judgment of the circuit court with directions, should that court exercise jurisdiction, to enter an order that appellant's claim is not barred by laches.

# 414

JUDGMENT OF THE CIRCUIT COURT FOR ST. MARY'S COUNTY REVERSED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS ASSESSED TO APPELLEE.